R. T. WELLER v. WESTERN STATE BANK OF WAUKOMIS.

(Filed February 14, 1907.)

NEW TRIAL—Order Granting, Reversed, When.  While trial courts are invested with a very large and extended discretion in the granting of new trials, and orders of the trial court in granting such new trials should not be reversed by the supreme court unless it can be seen that the trial court has manifestly and materially erred with respect to some pure, simple and unmixed question of law, without which error the ruling of the trial court granting the new trial would not have been made, and while every intendment is in favor of the order of the court, yet where the question presented for a new trial was one purely of law, and this court is satisfied that an error of law has been made by the trial court, and that without such error of law the trial court would not have granted a new trial, the order granting the new trial should be reversed.

(Syllabus by the Court.)

*Error from the District Court of Garfield County; before James K. Beauchamp, Trial Judge.*

*West & Scott,* for plaintiff in error.

*W. S. Denton* and *R. L. Denton,* for defendant in error.

STATEMENT OF FACTS.

This was an action begun by the plaintiff in error in the district court of Garfield county, by petition in which it was set forth that the plaintiff was a trader, residing at Roosevelt, Kiowa county, Oklahoma.  That the defendant was an Oklahoma banking corporation, situated at Waukomis,

Garfield county, Oklahoma. That on February 24th, 1903, there was deposited with defendant to plaintiff's credit, $152.98, which was subject to the check of plaintiff. That on that day plaintiff presented his check for that amount, which check defendant wilfully and maliciously refused to pay, and had the same protested, to the damage of the plaintiff to his credit, of one thousand dollars. To which petition a general denial was filed. Trial was had before a jury in the district court, and verdict returned in favor of the plaintiff for one thousand dollars. The defendant filed a motion for new trial on nine distinct grounds whereupon the said motion for new trial came on for hearing and the court made an order that if plaintiff would remit to $154,38, the motion would be overruled. That if such remittitur was not made, the motion would be sustained. Plaintiff refused to remit, a new trial was ordered by the court, excepted to by plaintiff, and this ruling is here assigned as error.

Opinion of the court by

IRWIN, J.: From an examination of the record, it is apparent that the facts of the case are about as follows: On February 24th, 1903, one Smith, paid to the defendant bank $280.00 to be placed to the credit of plaintiff, who was a merchant residing at Roosevelt, in Kiowa county, Oklahoma. That prior to the making of such deposit an arrangement and agreement had been entered into between the plaintiff Weller, Smith and the defendant bank, that Weller was to deposit certain securities which he held, with the bank, to be surrendered to Smith, on the payment of $280.00, and then the $280.00 was to be placed to Weller's credit in the

bank subject to his check. Simultaneously with the depositing of the $280.00 in the bank by Smith to the credit of Weller, a garnishee summons was served on the bank from a justice court in Garfield county. The bank notified Weller of the deposit, and also of the garnishment, and requested him to come to Waukomis and fix the matter up. Weller came to Waukomis, presented a check, and demanded his $280.00 notwithstanding the garnishment.

Payment of the check was refused. Weller then requested the bank not to pay any money on the garnishment, because he intended opposing that on the ground that as he was a resident of Kiowa county, a garnishment in Garfield county, without personal service on him, was void. Weller also notified the defendant bank that any payment made by them on the garnishment would be at the bank's own risk. He then tried to make some arrangment with the bank to indemnify them by a bond to secure them against loss. The bank, notwithstanding such notification and offer of indemnity, entered their appearance in the justice court and an order for judgment was rendered against them, and they paid out on such order to the justice court $152.98. The allegations of the plaintiff's petition are that he was a merchant or trader, situated at Roosevelt, in Kiowa county, and had been for some years prior to the filing of this suit. Further allegation is made that the refusal to pay his check when he had sufficient moneys on hand in the bank for the payment thereof was maliciously done, and with a wilful intent to injure him, and that in consequence of such wilful and malicious action on the part of the bank he has suffered damage in the sum of one thousand dollars. Upon

these facts the court submitted the issues to the jury, with
instructions to the effect that. they should find for the plain-
tiff for $154.38, actual damage shown, and such further sub-
stantial and temperate general damages as the non-payment
of this check must in their opinion, have caused injury, and
in addition, such exemplary damages, if they believed the
bank acted maliciously or fraudulently, but in no event should
the amount of recovery exceed one thousand dollars. The
jury returned a verdict of one thousand dollars, and upon
the presentation of the motion for new trial by the defendant
in the court below, which motion contained all the statutory
grounds, the court made the following order.

"*In the District Court.*
"Territory of Oklahoma County of Garfield.
"R. T. WELLER v. WESTERN STATE BANK.

"ORDER ON MOTION FOR NEW TRIAL.

"On this July 10th, 1905, plaintiff being present by Chas
West, his attorney, and defendant by W. S. Denton, its
att'y., and defendants motion for a new trial coming on to
be heard, the court finds that the verdict was not given
under the influence of passion or prejudice, and orders that
a new trial be granted unless plaintiff remit to the sum of
$154.38, with 7 per cent interest from June 15, 1903, and
costs, which plaintiff failing and refusing to do, the court
sustains the motion for a new trial, to which plaintiff ex-
cepts and upon application is granted 90 days to make and
serve case made for appeal to the supreme court, defend-
ant to have 5 days to make suggestions thereto, said case
to be signed and settled on 5 days notice in writing.

"JAMES K. BEAUCHAMP,
"Judge."

Now if the action of the trial court in compelling plaintiff to remit, or submit to a new trial can be sustained as a legal proposition, then this case should be affirmed. But, if, on the other hand, it is erroneous as a legal proposition, the judgment should be reversed. The only grounds which are alleged in the motion for new trial which seem to be insisted upon in this court in the brief of counsel for defendant in error, are the seventh, eighth and ninth, as they are the only grounds contained in the motion for new trial, and the only assignments of error which are argued in their brief, and under the well recognized rule of this court where grounds are assigned in the motion for new trial, and made the assignment of error in the trial court and are not mentioned in the brief in this court, they are treated as abandoned. However, we have carefully examined the record as to all of the other assignments of error contained in the motion for new trial, and do not think that the record bears out the contention of counsel for defendant in error. Now as to the 7th assignment of error, it is insisted that the court was correct in granting the motion for new trial because the court erred in giving to the jury instructions numbers 1, 2, 3, 4, 5, 6, and 7. We do not think this position is tenable, because we think that these instructions correctly state the law so far as the same were given at the instance of the plaintiff. We are at a loss in examining this record, to know just where counsel for defendant in error gets the authority for classing them as instructions 1, 2, 3, 4, 5, 6, and 7, as the record shows but two instructions which were given at the instance of the plaintiff, and they are numbered "1" and "3." Instruction numbered "1" is as follows:

"No. 1.    The court instructs the jury that if they find from the evidence that the defendant wrongfully dishonored a check made by the plaintiff and at that time the plaintiff was a merchant, upon these facts, if proved, the jury should award damages to the plaintiff, not only for the amount of money which you may find the defendants ought to have paid out on plaintiff's check and the actual damage thereby done plaintiff, but also for substantial and general damages for what you think are the material and necessary consequences that must result to the plaintiff's credit by way of imputation of insolvency, his honesty or bad faith in the drawing of the check, and the failure to pay the same.

"Plaintiff's request, given.    Ex. to deft. J. K. B."

Instruction numbered "3" is as follows:

"No. 3.    The court instructs the jury that if they find that the defendant wrongfully refused to pay the check of plaintiff and that this act on defendant's part was malicious and with the intention to injure the plaintiff or fraudulently and in bad faith on defendant's part, the jury should in such case given the plaintiff in addition to actual and substantial damage for the protest of the check of plaintiff if he was a merchant, also punitive damages by way of punishing defendant for the sake of example in such a sum as you shall agree upon, but the aggregate of your award shall not exceed the sum of $1000.

"Plaintiff's request, given. Ex. to Deft, J. K. B."

These instructions, in our judgment, lay down a correct proposition of law.    The other instruction which counsel for defendant in error must have classed as number 4, is not numbered, and does not show anything to indicate it was ever given by the court except the fact that it is contained in the record among the instructions marked "given."

There is no exception saved to it, and from the wording of the instruction itself, it was no doubt given at the instance of the defendant in error. In any event, we fail to see where defendant in error could in any way be injured by it. It reads as follows:

"If you believe from all the evidence in this case that the defendant, The Western State Bank, acted in good faith and paid out the money on the orders of court, and refused to pay the draft mentioned in the plaintiff's petition, believing that the money paid out by the said defendant left no funds in their hands for the payment of said draft, and believed that they were not indebted to said plaintiff in any sum, then if you find for the plaintiff, you can only find for the actual damages sustained."

The instruction which in the record immediately follows this, is not one which error would be predicted upon, as it merely states the law that the jury are the judges of the facts and the credibility of the witnesses.

The eighth assignment of error is because the court erred in refusing to give certain instructions asked by the defendant, to which refusal of the court to give such instructions, and each of them the defendant objected and excepted at the time. Now in examining this record it is apparent that in making up the number of instructions complained of in the seventh assignment of error, to wit: numbers from one to seven, inclusive, these instructions offered by the defendant, and refused by the court, which is embraced in the eighth assignment of error must have been included in those complained of in the seventh assignment of error, because it takes all of the instructions as shown by the record to make up the seven. These instructions being

offered by the defendant and excepted to by them, cannot be considered by this court for the reason that they have failed to comply with the requirements of the statute in regard to numbering and signing the same when they presented them to the court, and this court has held that the statute was mandatory. The section of the statute referred to is section 4165, Statutes of Oklahoma, 1893, which reads as follows:

"When the evidence is concluded and either party desires special instructions to be given to the jury, such instructions shall be reduced to writing, numbered, and signed by the party or his attorney asking the same."

And, in the case of *Live Stock Commission Company v. Fix*, 78 Pac. page 316, this court in discussing this subject in an opinion written by Justice Hainer, and concurred in by this entire court, lays down this rule:

"Under the provisions of our code, before a party can avail himself of any omission by the court to instruct the jury upon a given point which is not covered by the general instructions of the court, such party must, at the conclusion of the evidence, deliver to the court special instructions, and such instructions must be reduced to writing, numbered and signed by the party or his attorney."

And in support of this doctrine, the writer of that opinion cites the United States supreme court, and the supreme court of the state of Kansas.

Now an examination of these instructions will show that the general charge of the court as given at the request of the plaintiff not only entirely covered the case, but correctly stated the law, and that these instructions, asked by

defendant, if otherwise unobjectionable, do not contain a correct statement of law as applied to the facts in this case.

There is only one other assignment of error mentioned in the motion for new trial which is in any way referred to in the brief of counsel for defendant in error, and that is the ninth cause of a new trial as assigned by the motion for new trial, which reads as follows:

"Because the verdict of the jury herein is excessive, appearing to have been given under the influence of passion or prejudice."

We are at loss to understand how the writer of this brief could justify the statement on page three, "Thus it will appear from the record in this case, that there is no finding that the verdict was not the result or was not given under the influence of passion. In sustaining the motion for new trial, it might be that the court believed that the verdict was so given."

Now this proposition can hardly be maintained in the light of the order made by the court, as in that order it is expressly stated by the court "The court finds that the verdict *was not* given under the influence of passion or prejudice." The facts as developed in the evidence in this case show that there was at the time of the presentation of this check to the defendant bank, sufficient funds in their hands to have paid the check. That is, unless the bank was justified in paying out that portion of this deposit which they did pay out in answer to the garnishee summons served on them from the justice court. Now the court expressly instructed the jury, and we think correctly so, that "The Western State Bank had no legal right or authority to pay

into the justice court under the garnishment proceedings shown in evidence any sum of money and charge said payment to the account of the plaintiff." This instruction we think is correct from the fact that the defendant in the attachment proceedings which were the foundation of the garnishment summons, was a resident of Kiowa county. The attachment and garnishee summons were issued from a justice court of Garfield county. There was no personal service upon the defendant in attachment in Garfield county, and therefore the attachment and the garnishee summons thereunder were absolutely void.

The organic act of the territory, section 10, act of congress, May 2, 1890, chapter 182, among other provisions, contains the following:

"And all civil actions shall be instituted in the county in which the defendant or either of them resides, or may be found * * * " and our legislature after prescribing what actions are local, by sections 57, running section 4255, of the code, provides:

"Every other action must be brought in the county in which the defendant, or some of the defendants resides or may be summoned."

These provisions of the organic act, and of our code, have been referred to with approval, and held to be the settled law governing the courts of this territory by our own supreme court in the case of *Burke v. Mallaby,* 78 Pac. 105. The record in this case showing that the defendant in attachment proceedings, Weller, was a resident of Kiowa county at the time of the commencement of the attachment proceedings, and the fact that no service was had on him in Garfield county, any judgment that might be rendered by

the justice court in that attachment proceedings would be absolutely void for want of jurisdiction, and would be no protection to the bank in paying out any money on the judgment in garnishment rendered against them by the justice.

The supreme court of Colorado, in the case of *McFee, et al., v. Gomer,* 41 Pac. 836, holds:

"Under civ. code, sec. 118, declaring that garnishment is for the security of any judgment plaintiff may recover against defendant, and section 132 providing that the judgment against a garnishee shall acquit him from all demands by the defendant for anything paid by the garnishee by force of such judgment, the garnishee, notwithstanding payment under a judgment against him, is liable to defendant, jurisdiction of him having not been obtained, and judgment not having been rendered against him."

And, in the body of the opinion, the same court says:

"As the whole object of garnishment is to reach effects or credits in the garnishee's hands, so as to subject them to the payment of such judgment as the plaintiff may recover against the defendant, it results necessarily that there can be no judgment against the garnishee until judgment against the defendant shall have been recovered."

The court then cites in support, Drake on Attachment, sec. 460, *Washburn v. Mining Co.,* 41 Vt. 50; *Withers v. Fuller,* 30 Grat. 547.

And in the same opinion, that court says:

"He, (the garnishee) is held chargeable if the plaintiff should make out his main case. The decree, though literally positive, and free from all contingency, is qualified by law so as to render it dependent upon the principal judgment. The plaintiff's right of action, the effectiveness of the judg-

ment, and the protection of the garnishee from subsequent attack after payment under judgment, depend upon the principal action; its rightful institution, rightful judgment thereon, and rightful execution of the judgment."

The court then cites Waples Attachment, 344-347; *Lovejoy v. Albee,* 33 Me. 414; *Greene v. Tripp,* 11 R. L. 424; *Pierce v. Carlton,* 12 Ill. 358. And in the same opinion, the court citing Waples on Attachment, 382, quotes with approval the following language:

"The judgment against the defendant must be a lawful, and valid one. If it be void, the judgment against the garnishee is also void."

And the supreme court of Colorado, in the opinion, quoting from *Meely v. Burlis,* 124 Pa. St. 161, says:

"It is of the first importance, therefore, for the garnishee to see that the judgment against defendant was not only by a court with jurisdiction of the subject matter, but that jurisdiction of the defendant, or of the property or credit, was obtained in the manner pointed out by the statute. Against a judgment sought against himself, which is based upon a void judgment against the defendant, he must defend to the last, and is ordinarily compelled to defend alone."

And, further on, in the opinion, citing *Noble v. Oil Co.,* 79 Pa. St. 354, they say:

"When the garnishee pays a judgment against himself, which is based upon a judgment against defendant, rendered without jurisdiction, he is not protected by such payment against a subsequent action brought by the principal defendant or other creditor."

Further quoting from Wade on Attachment, 399, and *Laidlaw v. Morrow* 44 Mich. 547, that court says:

"When there is no judgment against the defendant, or a judgment that is void, for want of jurisdiction, and the court erroneously renders judgment against the garnishee, it will not be binding on the defendant, who was not a party to the proceedings."

Then the supreme court of Colorado, further on in the same opinion, say:

"After a careful review of the authorities, it seems clear that the law casts upon the garnishee the duty of knowing or ascertaining that there is a valid judgment against the defendants; not that he can intervene and defend in the principal suit, but so far as is necessary to protect himself in the auxiliary suit in which he is defendant. It follows that, without jurisdiction of the defendant, and judgment against him, the judgment against the garnishees was void, and that its payment would not protect them against the assignee of Jackson. A court that would enter such a judgment, and collect and retain the money and compel a litigation in regard to it cannot be too severely criticised."

Hence, as the judgment of the justice court against the bank as garnishee was absolutely void, it could afford no protection to the bank in paying it, and was no defense on the part of the bank against the payment of the check drawn by the plaintiff against the bank for the amount of money remaining in the bank or that should be remaining in the bank to the credit of the plaintiff Weller. We think the true rule is that where the petition alleges and the facts in evidence show that the plaintiff is a trader or merchant, such merchant or trader may recover against a bank, which, having sufficient funds to his credit, refused to honor his check, not only the amount of his check, but such substantial temperate general damages as to the jury may presume in-

jury resulted to his credit therefrom, together with exemplary damages if malice is shown, and such other special damages as are alleged and proven. And this rule does not depend entirely upon the allegation and proof of special damages. In the 5th volume of the American and English Encyclopedia of Law, page 1060, it is said:

"*Measure of Damages*, The depositor by proving special loss, is always entitled to recover substantial damages. But if unable to show any special loss or injury, the better opinion seems to be that he would still be entitled to recover such moderate damages as the jury should judge to be a fair and reasonable compensation for the injury which he must have sustained; for it is almost impossible for a check to be dishonored without reflecting upon the character and credit of the drawer, the extent of the injury being within the peculiar province of the jury to determine."

The author of this work cites as the leading case on this subject in support of this doctrine *Rolin v. Stewart*, 14 C. B. 595, in which case it is said:

"In this case, there was no evidence that the plaintiffs had sustained any special damage. Lord Campbell, C. J. in leaving the case to the jury, told them that they ought not to limit their verdict to nominal damages, but should give the plaintiffs such temperate damages as they should judge to be a reasonable compensation for the injury they must have sustained from the dishonor of their checks. The jury returned a verdict for plaintiffs for five hundred pounds. Williams, J. said: 'I think it cannot be denied that if one who is not a trader were to bring an action against a banker for dishonoring a check at a time when he had funds of the customer's in his hands sufficient to meet it, and special damages were alleged and proved, the plaintiff would be entitled to recover substantial damages. And when it is

alleged and proved that plaintiff is a trader, I think it is equally clear that the jury in estimating the damages, may take into their consideration the natural and necessary consequences which must result to the plaintiff from the defendant's breach of contract; just as in the case of an action for a slander of a person in the way of his trade, or in the case of an imputation of insolvency on a trader, the action lies without proof of special damage."

The court intimated that the amount awarded was very large, so the parties agreed that the verdict should be reduced to two hundred pounds.

In the case of *Birchall v. Third National Bank,* 15 W. N. C (Pa.) 174, 19, Cent. L. J. 390, two checks were dishonored by the defendant bank through a mistake of one of its clerks in adding the account, and although no special injury was shown, the jury returned a verdict for one thousand dollars, which was subsequently reduced to six hundred dollars. Here, P. J. charged the jury as following: "Inasmuch as the bank has the use of the money, it undertakes a duty. When there is evidence that there is enough deposit to meet a check drawn, and such check was not paid on presentation, and no sufficient explanation is given for nonpayment, there is sufficient for a jury. The difficulty is not so much whether the bank is liable, but as to the measure of damages. If there was anything to indicate that the conduct of the bank was wilful, or that it delayed to make the reparation, such as it could make, there, undoubtedly, another element would arise for the jury to mulct the bank; but there is no such case here, as it shows that there was an innocent mistake from the fault of a clerk, who in adding up the account, carelessly omitted a figure, and this result hap-

pened.  I do not know therefore, that there is any allegation that there was any gross negligence, and if that be so, the question is, what injury has the plaintiff sustained that would justify the jury to set the amount down in figures that he ought to receive to set the matter straight?  The mere fact that he was obliged to bring suit, if he ought to obtain any compensation; the mere fact that he was disturbed in his business might be reason to apply to the jury to give him compensation for it; but the serious question is, what is this injury, the real harm he suffered?  It has been said the smaller the check, the greater the injury.  I confess it does not strike me in that light; it is altogether a question of circumstances."

And in the case of *Marzetti v. Williams,* 1 B Ad. 15, 20 E. C. L. 412, Lord Tenterden, Chief Justice, said:

"I cannot forbear to observe that it is a discredit to a person, and therefore, injurious in fact, to have a draft refused payment for so small a sum, for it shows that the banker had very little confidence in the customer.  It is an act particularly calculated to be injurious to a person in trade."

In the case of *Larios v. Guerty.* 8 Moak. 268, L. R. 5 Priv. Counsel cases, 346, the judgment was rendered by Sir. James Caldwell, and that learned jurist uses this language:

"And the contract being a special one, whereby the defendants became bound to honor, out of money agreed to be placed by them to his credit, the drafts of plaintiff up to a certain amount, the plaintiff was entitled to general and substantial damages for the breach of it."

In that case, $2,500 was allowed plaintiff as general damages in addition to the sum of $1218, the deposit on hand when the draft was dishonored, together with $5.00, the costs of protest, and this amount, on motion for new trial, was allowed to stand by the court and was affirmed on appeal to the House of Lords, the highest court of England.

In the case of the *Atlanta National Bank v. Davis,* 96 Ga. 334, 23 S. E. 190, 51 Am. State Rep. 139, which was a case in which the court found from the evidence that the refusal was not deliberately and maliciously done but was in consequence of a mistake only, the court held that $200 damages where no actual damage was proved, and where the check was afterwards paid, was temperate damages, and cites as authority for this proposition, 2 Addison on Contracts, 820.

In the case of *Schaffner v. Ehrman,* reported in the 15 L. R. A. at page 135, the supreme court of Illinois, in the syllabus, say:

"For refusal of a bank to pay the check of a trader for want of funds, although occasioned by a mere mistake in bookkeeping, more than nominal damages may be given without any proof of actual loss or damages, especially if it is returned through the clearing house."

Judge Wilkin, in rendering the opinion, on page 136, says:

"Appellants requested the circuit court to hold as a proposition of law applicable to the case, that, to entitle plaintiffs to recover more than nominal damages, they must prove that they had sustained actual or substantial damages; or that the defendants acted from malicious motives in refusing payment of the checks in question, and that the law will

not, without proof of special damages, presume that by the dishonoring of the checks, plaintiffs sustained special damages; but the request was denied. The case turns upon the correctness of this ruling. The refusal to pay these checks was the result of mere error in bookkeeping, and not made from any express motive to injure appellees. It was shown on the trial, by other bankers, that such mistakes are liable to occur in any bank, and cannot be wholly avoided. One of the appellees testified on this trial that he had written a letter to the payee of one of the said last named checks, residing and doing business in Philadelphia, requesting him to have his agent call upon their firm, which agent had previously called upon them to solicit orders, as they wished to purchase goods; but he never received any reply to the letter, never saw the agent, heard nothing either from the agent or from the house, or any other person concerning said check or said letter. He also said that said check drawn in favor of said Philadelphia house had been protested for non-payment when payment was refused on first presentation. This was the only evidence from which it could be inferred that actual loss or injury resulted from non-payment of either of said checks; and it would not be sufficient to sustain a judgment for more than nominal damages, if substantial damages can only be allowed in such cases upon proof of actual damages or loss. The question therefore is, what is the measure of a banker's liability to a person engaged in trade for a refusal to pay his check, he having sufficient funds on deposit for that purpose, in the absence of evidence of malice or special injury to the depositor? Authorities are not numerous on the question, but they seem to be uniformly to the effect that more than mere nominal damages are in such cases recoverable. The leading case is that of *Rolin v. Stewart,* 14 C. B. 595."

This last case cited by the Illinois supreme court has been heretofore mentioned and quoted in this opinion. And

the writer of that opinion, in the Illinois supreme court, quoting from Bishop Non-Cont. Law, sec. 49. 1 Sutherland on Damages, p. 129, 3 Am. & Eng. Ency. Law. p. 226, says:

"The depositor by proving special loss, may recover special damages from the bank for its breach of duty, but, if unable to do so, he may recover such temperate damages as will be a reasonable compensation for the injury he has sustained. Where a bank refuses to honor a check of its depositor without legal cause, the latter is entitled to recover substantial damages."

And in this opinion, that learned judge also says:

"In the Pennsylvania case the point is directly decided. The ground upon which substantial damages is there held recoverable is that of public policy. We have also examined the text books on the subject of banks and banking within our reach, and find that they uniformly, so far as they treat of the subject, approve of the rule as announced in *Rolin v. Stewart, supra.*"

The writer of that opinion further on in the opinion, says:

"We are of the opinion that the conclusion in that case was reached by proper reasoning. It is well understood that an action of slander by a person for the speaking of slanderous words of him in the way of his trade, the fact that he is a trader takes the place of special damages. To return a check marked 'refused for want of funds' to the holder, especially through a clearing house, certainly tends to bring the drawer of that check into disrepute as a person engaged in mercantile business; and it needs no argument to show that a single refusal of that kind might often and frequently does, bring ruin upon a business man; and yet it is no more possible in either case to prove special or actual damages

than it is for one charged with the commission of a crime
to show specifically in what manner he has been injured.
It is said, however, that in an action of slander a recovery
is had because of slanderous words spoken maliciously, and
here it is said there was no malice whatever. While it is
true that in slander malice is the gist of the action, yet
the term 'malice' is always used in such cases in a legal
sense. As was said by Bayley, J. in *Bromage v. Prosser,* 4
Barn. & Co. 247, which was an action for the slander of a
bank, the words being, in substance, 'that it had stopped
payment, 'malice' in common acception, means ill will against
a person, but in its general sense, it means a wrongful act,
done intentionally without just cause or excuse. And if I
traduce a man, whether I intend to do him injury, or not,
I apprehend the law considers it as done of malice, because
it is wrongful and intentional. It equally works an injury
whether I mean to produce an injury or not; and if I had
no legal excuse for the slander, why is he not to have a
remedy against me for the injury it produces? So here,
the bank wrongfully refused to pay the checks of appellee.
That refusal was intentional, and without just excuse. There
were therefore, all the elements of legal malice, although
there might have been no intention to injure the appellee.
See Starkie, Slander & Libel, p. 191; *Com. v. Bonner,* 9 Met.
412. We cannot say that the damages allowed in this case
were excessive under all the circumstances."

In this last case the jury returned substantial damages
in the sum of $450.00, although the proof failed to show
any actual damage, the checks having been paid the next
day after presentation and refusal.

In the case of *Bank of Commerce v Goos.* 39 Neb.,
reported in the 23 L. R. A. 190, the Nebraska supreme court
cites with approval the case of *Schaffner v. Ehrman,* from the

Illinois supreme court, *supra,* and in the syllabus of the Nebraska case, that court says:

"The damages recoverable for the refusal of a bank to pay a check drawn upon it by one who has funds with the bank wherewith to make such payments should not exceed such amount as reasonably and fairly in the natural course of things, would result from such refusal.

"General damages are such as the jury may give when the judge cannot point out any measure by which they are to be ascertained except the opinion and judgment of a reasonable man. Special damages are such as by competent evidence are directly traceable to defendants failure to discharge his contract obligations or such duties as are imposed upon him by law."

The case of the *American National Bank v. Morey,* was twice before the supreme court of Kentucky. It first appears in 69 S. W. 759. The plaintiff's husband had deposited $150 in the defendant bank to plaintiff's credit. He afterwards raised a check given him and committed suicide. The plaintiff then deposited $72.00, drew out $50.00 in two checks of $25 each, and then drew a check for $30, which the defendant refused to pay for want of funds. By mistake, the $150 first deposited to plaintiff's credit by her husband had been charged off against an indebtedness of $1000, the bank believing that the money was his. No malice was shown or pleaded against the bank, nor was its failure to pay wilful, but arose from the foregoing mistake. After the suit was filed, the defendant paid the plaintiff the $162, which they held of her money, and there was therefore no actual damage nor any malice proved. The plaintiff sought to recover however for humiliation and great

mental suffering. She recovered a verdict for $600. This the court set aside, after, however, citing the English and American cases named before, for the reason that there was no evidence of a loss of credit, and of course no presumption of such, because plaintiff was not a trader, and upon the ground that damages for nervous chill were too remote, and that loss of time and expense incurred, and loss of business had not been properly plead. The petition was amended to set up loss of time and business, and again appears in 80 S. W. 157, the jury having given the plaintiff a judgment for $500, the only actual damage shown being $2.86 for telegraphing her relatives for money, and this the court sustained, upon the theory that this was a matter that ought not be settled by a judge, but by a jury, and that the court did not mean to invade the province of the jury where there were facts tending to support the plaintiff's contention.

The supreme court of Massachusetts, in the case of *Wiley v. Bunker Hill National Bank,* 67 N. E. 665, say:

"This cause of action arises out of a breach of contract, and the parties damaged may recover actual damages and in the case of a trader, injury to his credit may be inferred from the fact that he is a trader, and substantial damages may be found and given upon proof of that fact without anything more."

In the case of *James Co., v. Continental Nat'l Bank,* 105 Tenn. 1, 58 S. W. 261, 51 L. R. A. 255; in the syllabus, the supreme court of Tennessee say:

"Failure to allege special damages is not fatal to a complaint for wrongful refusal to honor a check, where it is averred that plaintiff is a trader.

"Evidence of the general impairment of credit resulting from the dishonor of checks is admissible in an action therefor, without any averment of special damage.

"The law conclusively presumes that a trader is damaged by the wrongful refusal of a bank to pay his checks."

In this case, the J. M. James Co., a mercantile firm in Memphis, was on the 19th day of March, 1897, a customer and depositor with the defendant bank. On that day it drew several checks in favor of different payees, on this bank, which were presented the following day for payment. When so presented, payment was refused and their respective holders were notified of the fact. Subsequently this action of the bank was re-considered, and the checks were re-called and paid. The declaration of the plaintiff contains five counts.

1.    That the plaintiff was and had been engaged as a trader, in the mercantile and commission business, in Memphis, for several years prior to March, 19, 1897, and a customer of and depositor with the defendant bank, and that on that day, and for several days prior and subsequent thereto, it had on deposit with the defendant $3212.46 subject to plaintiff's checks. That on said day it drew several checks on defendant bank, naming the payees, and amounts. That said checks were presented on March 20, 1897, to the defendant bank for payment, payment was refused, and the checks were thereby dishonored, and that such refusal was wrongful, and a breach of the contract between plaintiff and defendant, and that plaintiff suffered great injury therefrom in the sum of $75,000.00.

The second count, after repeating the language of the first count, alleges that the refusal and failure of the bank to pay said checks was wrongful, wilful and malicious. The third count after repeating the second count, alleges that the refusal to pay said checks was wrongful, wilful and malicious, and was done with the intent and purpose on the part of the defendant to injure the plaintiff in its credit, business and reputation. The fourth count, after repeating the third, alleges the failure and refusal on the part of the bank to pay said checks was wrongful and a breach of its contract with plaintiff and plaintiff avers that it has been injured in its credit, and reputation in consequence of such refusal. The fifth count, repeats the fourth, and alleges that by virtue of the wilful, wrongful and malicious refusal to pay these checks, that the plaintiff has been injured in his reputation and credit, and has lost various customers, and is damaged in the sum of $75.000.00. In the opinion, written by Judge Beard, the court says:

"Many errors are assigned for a reversal of this case. The record is also before us on a writ of error sued out by the defendant bank, which assigns error to the action of the trial judge in overruling its demurrer ·to the first count. One of the contentions presented by the demurrer was that all the counts of plaintiff's declaration were laid in tort, to recover damages for slander to the reputation and credit of the plaintiff, and that the suit was barred by the statute of limitations of six months. This somewhat novel view was adopted by the trial judge, as to the last four counts, and as to them this ground of demurrer was sustained, but overruled as to the first; the court holding, as we assume, that this count was one *ex contractu*. It is with great earnestness argued by the defendant bank that, as to these four

counts, this is a sound view, and that the judgment of the lower court in this regard should be maintained. The statute of limitation relied on by the demurrant, and applied by the trial court to the counts. in question, is in these words: 'Actions for slanderous words spoken shall be commenced within six months after the words spoken.' Shannons Code sec. 4468. It would seem as if it would have been difficult for the legislature to choose words which would more clearly exclude such an action as the present one from the operation of this section, or more apt to embrace alone an action for slander, as this offense is defined by the text-books, the reported cases, and by standard lexicographers, both law and literary. All these substantially agree in defining slander as the speaking of base and defamatory words which tend to prejudice the reputation, office, trade, business or means of getting a living, of another. Cooley, Torts. p. 229, 235; Newell, Defamation, 40; Townsend, Slander & Libel, sec. 43, Rapalje & L. Law Dict. 1198, 3 Bl. Com. 183; *Pollard v. Lyon,* 91 U. S. 225, 23 L. ed. 308; *Harrison v. Buren,* Thomp. Cas. 152; Webster Dict. But it is urged that slander may be perpetrated by an act or deed, and that when a banker wrongfully rejects his depositor's checks, as is charged in these counts, he slanders his business reputation and credit—as much so as if he had defamed him in uttered words; that in such case, it is the 'act speaking,' thus bringing the case within the terms of the statute. It is true, we often say that actions speak as in the homely adage, 'Actions speak louder than words,' but this is a mere figure of speech, and by it is meant that the acts or deeds of one convey to others more distinct impressions than mere words, and frequently contradict the latter. But the legislature was not, in passing this statute, refining upon the term 'slander.' An act, may, in the sense indicated, speak, but it has no articulate voice; and it is the slander so uttered, (that is, by spoken words) which is in the spirit and letter

of this section.   We have examined the authorities relied
on by the demurrant to sustain the trial judge in the con-
clusion reached by him that these were counts in slander,
within the terms of this section, and by it barred, because
the suit was brought more than six months after the utter-
ance of the slander, and we can discover in them no support
for the contention of demurrant.   Before referring to them,
it is well to say that none of the works on Libel and Slander,
accessible to us, have by their authors included what is called
by the counsel for demurrant 'Slander by deed or   act.'
Slander by spoken words is uniformly the subject of their
test.   In fact, Mr. Odgers, in the introduction to his work
on Libel and Slander, (p. 8) says:  'A man's reputation
may also be injured by the deed or action of another, with-
out his using any words, and for such an injury he has
not an action on the case, but such cases are not within the
scope of the present treatise.'   Among the illustrations of
such an actionable injury, but yet outside the limits of a
work on slander the author gives that of a banker having
in his hands sufficient funds belonging to his customer, and
dishonoring his check.   Cited to this text are the cases of
*Marzetti v. Williams,* 1 Barn & Ad. 415, and *Rolin v. Stewart*
14 C. B. 595; and while they support it, they give no color
to the present insistance that this act of the banker is
slander, either in its technical, or common acception.   On
the contrary, Williams, J., in the last mentioned case, says,
that such an action is like an action of slander brought by
a trader as such, for an imputation of insolvency, so far as
the right to recover in damages is concerned; thus, by im-
plication, negativing the idea that it was an action of
slander.   Upon the basis of the analogy thus suggested, be-
tween the two actions as to the right and measure of recovery
of damages, rests whatever there may be misleading in the
later authorities.   Mr. Cooley, in his work on Torts, in note
to the text, on page 203, says: 'It is a species of slander of

credit for a bank to refuse to honor the check of its customer who has money on deposit subject to call.' Citing to his note, these two English cases. This is also true as to a foot note found on page 58, Townshend, Slander & Libel. The only case which the industry of counsel for demurrant has been able to bring to our attention, which gives any support to this contention, is that of *Svensden v. State Bank*, 64 Minn. 40, 31 L. R. A. 552, 65 N. W. 1086. This, like the two cases already referred to, was an action by a trader against a bank to recover damages for dishonoring his check when it had ample funds of the depositor to meet it. In dealing with this right to substantial damages, the court said: 'The case of *Patterson v. Marine National Bank*, 130 Pa. 419, 18 Atl. 632, seems to place the right to recover more than nominal damages in such a case on the ground of public policy; but the other cases place it rather on the ground that the wrongful act of the banker in refusing to honor the check, imputes insolvency, dishonesty, or bad faith on the part of the drawer of the check, and has the effect of slandering the trader in his business * * * * * To refuse to honor his check is a most effectual way of slandering him in his trade, and it is well settled that to impute insolvency to a merchant is actionable *per se,* and general damages may be recovered for such slander.' It is apparent however, that the court was not treating the case in hand as an action for slander, but was dealing with the act of the bank, that was just as effectual in imputing dishonesty or insolvency to its customer as if either had been charged against him by word of mouth, and in the analogy between the cases found a ground common to both for substantial damages."

Here the Tennessee court again cites with approval, the cases of *Shaffner v. Ehrman*, 139 Ill. 109, 15 L. R. A. 134, and *Bank of Commerce v. Goos, supra.* Then that court proceeds in the opinion, as follows:

"These cases, like the others, are dealing with the question of damages properly recoverable upon the mere averment of the plaintiff, without more, that the plaintiff was a trader; and all agree that in such case he should be awarded temperate but substantial damages, for in such a case, 'It is as in cases of libel and slander, which description of suit it closely resembles, inasmuch as it is a practical slur upon the plaintiff's credit and repute in the business world."

"We think there can be no doubt that the trial judge fell into serious error in treating these counts as counts in slander, and holding them barred by the statute of limitations of six months. He was equally guilty of error in sustaining the defendant's first ground of demurrer to the second count of the declaration. This count has already been set out. It is in tort. It was a count for a breach of duty growing out of the implied contract of the bank to honor plaintiff's checks as long as he has money to his credit. It was a count *ex delicto. Junker v. Jobes,* 45 Fed. Rep. 840. It is alleged that plaintiff was a trader, and as such engaged in the mercantile or commission business in the city of Memphis, but, as may be seen, averred no special damage as the result of the defendant's wrongful conduct. The ground of demurrer referred to is that its failure to allege special damage was fatal. The authorities are uniform that the averment that plaintiff is a trader is sufficient, and he is entitled in such a case, to recover substantial damages, though special damage is not alleged."

The Court then cites: *Rolin v. Stewart,* 14 C. B. 595; *Patterson v. Marine Nat. Bank,* 130 Pa. 419; *Atlanta Nat. Bank v. Davis.* 96 Ga. 334, 23 S. E. 190.

And the Tennessee supreme court, quoting from *Shaffner v. Ehrman. supra,* say:

"It is held that the averment that plaintiff is a trader supplies the lack of allegations that he suffered special dam-

age, or that the defendant acted out of malice in dishonoring his check. The assignments of error taken by plaintiff below to the action of the court in the two particulars just mentioned, are therefore well taken."

And, further in the same opinion, that court says:

"The trial judge was also in error in the following instruction, 'Under the law of this case, the only damage that can be considered by the jury is the damage to the credit of the J. M. Hames Company with the persons or corporations to whom they gave the checks, as established by the evidence.' It is evident that this narrow limitation upon the right of recovery by the plaintiff was in the face of the authorities already referred to. The rejection by a bank of a check drawn upon it by a customer, brings discredit to the drawer, not only with the person presenting it, but necessarily with all persons informed of the fact. And, if this customer is a merchant or a trader, its natural effect is an injury to his business standing, as far as the knowledge of the fact extends, for which he is entitled to substantial, though temperate damages, measured by all the facts in the case."

It is evident from the record, that this was the view taken by the trial judge in this case, as will be seen by the record and instruction No. 1, which is as follows:

"The court instructs the jury that if they find from the evidence that the defendant wrongfully dishonored a check made by the plaintiff and at that time the plaintiff was a merchant, upon these facts, if proved, the jury should award damages to the plaintiff not only for the amount of money which you may find the defendant ought to have paid out on plaintiff's check, and the actual damage thereby done plaintiff, but also for substantial and general damages for what you think are the material and necessary conse-

quences that must result to the plaintiff's credit by way of imputation of insolvency, dishonesty, or bad faith in the drawing of the check and the failure to pay the same."

Now in the light of the above authorities, we think there can be no doubt that this instruction was a clear, concise, and absolutely correct statement of the law. And being stated, and the jury having followed it, and rendered a verdict not only giving the plaintiff damage for the actual amount of damage sustained, which would be the amount of the check dishonored, together with protest fees, but also gave as substantial and general damages the further sum of the difference between the actual damages, and $1000, the amount of the verdict, we are at a loss to know upon what ground the trial court would be justified in compelling the plaintiff to remit down to the actual damage sustained, or to submit to a new trial of the case. And we can only account for that action upon the theory that the trial court overlooked a plain provision of our code which is intended as a limitation on the right of the court to grant a new trial on the ground of excessive damages. The provision of our code referred to, is in the statutory grounds for a new trial, and is set up in the motion for new trial in this case, in the ninth ground, to wit: "Because the verdict of the jury herein is excessive, appearing to have been given under the influence of passion or prejudice." We can hardly presume that where the question of damages is one for the jury to determine, and where the jury are properly instructed as to the law, and act without passion or prejudice, and with cool, calculating, and deliberate judgment render a verdict for damages based on the evidence, that the trial court

would substitute his individual judgment as to the amount of judgment for the combined judgment of the 12 jurors in the absence of any influence of passion or prejudice acting upon the minds of the jury. This provision in our statute is no doubt an equitable, just and salutary one. As judgment of twelve intelligent, candid minds, acting with coolness and deliberation in assessing the amount of damages, where the question is absolutely within the province of the jury, it should not be disturbed for the sole and only reason that it does not meet with the approval of one man, although that one man, may, for the time being, be the presiding officer of that court. This provision is one that has met the approval of most all of the courts of last resort who have passed on the question, and we can only account for the action of the district court in granting a new trial, or compelling a remittitur upon the theory that the court, in his individual judgment, believed that the damages were excessive, and overlooked the restriction or limitation of our code that such excessive damages would not be a cause for granting a new trial, unless the court believed the same was rendered under the influence of passion or prejudice. It is evident that the trial court did not believe that the controlling or governing influence upon the minds of the jury was prejudiced or that the verdict of the jury was given out of passion, because in his order, he has deliberately stated that this was not the fact. Now while we recognize the fact that the granting or refusing of a new trial is a question in which the trial court is allowed a great latitude, and is one which required the descretionary power and one which the supreme court will not disturb unless it is manifest there

has been an abuse of discretion, or that the trial court has committed an error as to some pure, simple, and unmixed question of law, and in this case, we are constrained to the opinion that the trial court overlooked the clear, plain provision of our statute which requires that before a verdict shall be vacated, or a new trial granted, that it must appear that such excessive judgment was obtained under the influence of passion or prejudice and that in deciding that this judgment was excessive, he failed to find that the same was probably obtained through the influence of passion or prejudice, but on the contrary, he found exactly to the contrary. Under these circumstances, we think that the granting of a new trial on the failure of plaintiff to remit down to the actual damages, was an error. The holding of the court upon this motion was to the effect that under the pleadings and evidence in this case no recovery could be had for anything except actual damages as the evidence clearly shows that the actual damage sustained was the exact amount to which the court required the plaintiff to remit to avoid the granting of a new trial, and we think this clearly shows that the court was acting upon the theory of the law that only actual damages could be recovered, and this being in our judgment clearly erroneous, the decision of the district court in granting the new trial was error, for which the case should be reversed, which is accordingly done, and the case is hereby remanded to the district court of Garfield county, with instructions to overrule the motion for new trial, and to enter judgment on the verdict of the jury, at the costs of the defendant in error.

All the Justices concurring.