## SPRUCE v. CHICAGO, R. I. & P. RY. CO. et al.

No. 18396. Opinion Filed June 25, 1929.

Rehearing Denied Oct. 29, 1929.

Ledbetter, Stuart, Bell & Ledbetter and A. G. Morrison, for plaintiff in error.

W. R. Bleakmore, John Barry, and A. T. Boys, for defendants in error.

HALL, C. The essential facts in this case are substantially as follows: Defendant in error is a railway company, having one of its railway shops in the city of Chickasha, in this state. Plaintiff in error, who was plaintiff in the court below, was a common laborer in the employment of the defendant in error, Chicago, Rock Island & Pacific Railway Company. His labors were performed in the shops of said company. One Robert Hall, who was codefendant in the action in the trial court, was also in the employment of the railway company, and held the title of apprentice boilermaker foreman. On the day which plaintiff received certain injuries hereinafter noted, he was assisting Hall in rolling or tightening flues in the boiler of a stationary engine in the shop yards of the company. It seems that plaintiff and Hall had been performing this particular work for about three consecutive days. It is difficult to describe the method of performing the work, as we were not furnished with the real evidence, to wit, an exhibit of the air motor and attachments to it for the purpose for which it was being used; but, in general terms, the manner of performing the work was by an air motor used as motive power which connected to a conical instrument fitted with rollers, which instrument was connected to the air motor with a shaft and universal joint. The air motor was a box affair of dimensions of about 14," x 8," and about 7" or 8" in thickness. The plaintiff and his immediate superior, Hall, preceding the injury, had been using a practically new air motor, and apparently using it with satisfactory results and no untoward effects.

124

Just before the injury occurred to plaintiff, an employee of the company, whose name was Golden, who was also a kind of a boss or foreman, came and took this new air motor away from plaintiff (took it away peaceably, of course) and put it in use with another crew. The plaintiff was told by one of the company's employees, and one in authority, to go to the tool house and get another air motor. He complied with the command, went to the tool house of the company, and the man in charge handed him out an air motor which he and Hall proceeded to use, with certain disastrous results. This was an old motor, and it appears that it was lacking in what the witnesses termed a "yoke," which yoke was a device to fasten directly to the boiler-head for the purpose of utility and safety. This old motor, in use when the injury occurred, did not contain a yoke, but was fastened to the top of the boiler with a chain tied in some manner to the handle. It appears that when this type of motor is to be used, that the proper method is to tie it above and below with a chain. This was not done. When this old motor was put into service, about one minute thereafter or as soon as plaintiff was signaled to reverse the motor, in order to withdraw the conical instrument, the flue roller, the contraption flew out of socket; that is, the universal joint detached, leaving the motor full of air, and it thereby flipped or flopped over with terrific force breaking plaintiff's right arm in two places and dislocating his wrist, resulting in permanent injuries to his arm and hand.

The only testimony in the case was the testimony offered and produced by plaintiff. Therefore, the testimony of plaintiff and his witnesses is the testimony in the case. In addition to himself, plaintiff produced one James B. France, who testified in detail concerning the mechanism of the air motor, and the machinery attached thereto, for the purpose of rolling flues, and also testified regarding the relative safety of the two types of motors used by plaintiff; the one which he had been using—that is, the one which was taken away from him—and the one which was given him which failed to properly work, or at least, the one which he was using at the time the injury occurred. He testified that "in using a yoke, sometimes the motor will stick and drop over and the yoke will hold it down. The yoke holds it down, and the chain lets it flop over." He testified, however, that sometimes the universal joint or shaft that connects the universal joint will slip. This witness also testified that when this joint is in good con-

dition and the machinery is properly operated, it will not come out or become disconnected.

The plaintiff, in performing this work, that is, rolling flues, stood about three or four feet from the flues, and his immediate foreman, Hall, stood between the motor and the flues and directed the work, giving signals when to turn on the power and apply the force, and when to reverse the motor and remove the roller. When the injury occurred, the plaintiff was acting in obedience to the commands and directions of his immediate foreman, Hall.

A medical doctor, who attended plaintiff after his injuries, testified to the extent of the injuries. After testifying to the nature of the fractures and resulting deformities of the arm, he stated that defendant could do no heavy labor with that hand, that he could not bend his wrist on account of the position of the bones or their dislocation, that it would cause pain if he did. As to the permanency of the injuries, he said:

"It is painful whenever he uses the wrist or the arm and is a permanent injury on account of the misalignment of the bone. Then there are adhesions formed between the ends of the two lower arm bones and the bones which form the wrist, giving him a stiff wrist."

The defendants demurred to the evidence, and requested a peremptory instruction. The demurrer was overruled, and the requested instruction, which was a request for directed verdict, was also overruled. The cause was submitted to a jury and the jury returned two verdicts; one against plaintiff and in favor of defendant, Hall, and another verdict in favor of plaintiff and against the defendant railway company for the sum of $10,000.

This occurred on the 12th day of November, 1924. The following day, the defendant railway company filed its motion for a new trial upon various and regulation grounds. This motion was not acted upon, and on March 26th of the following year, defendant railway company, in addition to the motion for new trial, filed its motion for judgment notwithstanding the verdict.

Immediately thereafter, these motions were argued to the court, and on December 18, 1926, more than two years after the cause was tried, the court filed a journal entry of judgment sustaining both motions; that is, the motion for new trial and the motion for judgment notwithstanding the verdict. Judgment notwithstanding the verdict was rendered.

The act of sustaining both motions, that is, granting the motion for new trial and rendering judgment notwithstanding the verdict was rather a novel procedure, and introduced an entirely new principle into jurisprudence. It seems to be everywhere recognized that where a motion for new trial is pending before the court, and also where a motion for judgment notwithstanding the verdict is pending at the same time, the movant in the motions is entitled only to alternative relief; that is, both motions cannot be sustained, notwithstanding that the facts in the case may clearly entitle him to the relief asked for in either motion. This seems to be the accepted law. At least, the rule is recognized and sanctioned by practically all, if not all, of the authorities. Luse v. Union Pacific Railway Co. (Kan.) 46 Pac. 768; Farmers Savings Bank v. Burr Forbes & Son, 151 Iowa, 627; Olson v. Minn. & N. W. Ry. Co., 89 Minn, 280, 94 N. W. 871; Jones v. Chicago, St. P. M. & O. Ry. Co., 80 Minn. 488, 83 N. W. 446; Kommerstad v. Great Northern Ry. Co., 125 Minn. 297, 146 N. W. 975; Pine Tree Lumber Co. v. Fargo, 12 N. D. 360, 96 N. W. 357; and Harker v. Smith, Exr., 5 Ohio Decisions (Reprint) 560. (Reversed on other grounds in 41 Ohio St. 236.)

In the case of Harker v. Smith, supra, there was pending before the court a motion for new trial and a motion for judgment notwithstanding the verdict. Upon the merits of the case either motion could have been granted. However, the court sustained the motion for new trial as it was the first in order in logical sequence, and having sustained the motion for new trial, overruled the motion for judgment notwithstanding the verdict solely upon the ground that the motion for new trial had been sustained. The party moving for the judgment non obstante appealed, and the court held that the ruling was not error. In the second paragraph of the syllabus of that case, it was said:

"Motion for new trial should be heard and disposed of before motion for judgment non obstante veredicto. **When a party has by motion had a verdict set aside and new trial granted, it is not error to overrule his motion for judgment, notwithstanding the verdict.**" (Emphasis ours.)

In the body of the opinion the matter was discussed at some length. The opinion emphasizes the fact that had the defendant filed no motion for new trial, or if his motion for new trial had been overruled, he would have been entitled to a judgment notwithstanding the verdict, because the petition was fatally defective. In this connection, the court said:

"The second article of the petition presents a different question. The second article does not set forth a good cause of action; it is bad on general demurrer. But the defendant having filed at the some time a motion for new trial and a motion for judgment **non obstante**, the motion for new trial is in regular course heard first. And as the motion for new trial was granted as to the second article, the motion for judgment **non obstante**, was, of course, overruled, after a new trial was ordered at the defendant's instance.

"If the defendant had filed no motion for new trial, or if his motion for new trial had been overruled as the second article also, **he would have been entitled to his judgment on the pleadings.** So, if the verdict had been in favor of the defendant (for under the Code the rule is the same for defendant, and plaintiff) on the second article, and he mistrusted that error had intervened at the trial, he might take judgment on the pleadings notwithstanding the verdict in his own favor, instead of taking judgment on the verdict. **But when the party against whom a verdict is rendered, moves successfully for a new trial, he has surrendered his right to a judgment on the pleadings notwithstanding the verdict;** for as soon as the new trial is ordered, the other party has a right to ask leave to amend his pleading." (Emphasis ours.)

The procedure observed and the rule announced in the case of Harker v. Smith, supra, appeal to us as the most logical rule to observe, if we disregard what this writer believes to be the only logical and just procedure applicable to situations of this nature, which rule would be to entirely disregard the motion for new trial when a judgment notwithstanding the verdict has been sustained, because the judgment in such case has entirely circumvented the verdict and rendered the verdict wholly immaterial and an entirely useless factor in the case. This rule, however, although fully recognized in a dissenting opinion in the case of Luse v. Union Pacific Railway Co., supra (57 Kan. 361, 46 Pac. 768), is not observed generally by the appellate courts; and my associates prefer not to adopt it as a rule of practice in this state. However, the reasoning in support of the rule by Chief Justice Martin of the Kansas Supreme Court is worthy of reproduction here:

"The only other question in the case is whether judgment should be entered in favor of the plaintiff, or the case remanded for a new trial. The writer is of the opinion that the proceedings of the court upon the motion for a new trial were erroneous, and should be disregarded, and that judgment should be entered for the plaintiff upon the general

verdict, the same being in accord with the answers of the jury to the particular questions of fact. We all agree that a defendant may file a motion for a favorable judgment on the findings and a motion for a new trial at the same time; but, as both cannot be granted, the writer is of the opinion that the allowance of either ought to operate as a withdrawal of the other,—at least, the court should not rule upon the latter. To sustain the defendant's motion terminating the case in his favor, and then entertain another motion of the defendant to set aside the judgment just obtained, and for a new trial, and allow the defendant the benefit of an exception on overruling it, is certain a lowering of the dignity of a court that ought not to be encouraged. A party should not be permitted to rely in one breath upon the findings of fact as true, and, obtaining a favorable ending of the case on that assumption, in the next challenge them as false, and be allowed an exception when the court adheres to the former ruling in favor of the defendant by refusing to set it aside on such motion for a new trial. With the view entertained by the trial court, the defendant should have been given an election to take a new trial, or stand upon the favorable judgment on the findings of fact. A court ought not to allow a party the benefit of two inconsistent and contradictory positions in the same lawsuit. Plow Co. v. Rodgers, 53 Kan. 743, 37 Pac. 111; National Bank v. First Nat. Bank, 57 Kan. 115, 45 Pac. 79. It may be maintained that a particular moment of time was noon or midnight, but, when a party asserts that it was both, the court ought neither to listen to him nor grant him the benefit of each assumption as against the other."

However, unless the action of the court in sustaining both of these motions is an absolute nullity, which seems to be against the numerical weight of the authorities, the action in sustaining the motion notwithstanding the verdict is a nullity.

We shall now proceed to examine the question as to whether or not the facts in the case justify a review of the motion for new trial. It appears that the new trial was granted upon a mixed question of law and fact, largely upon a question of fact. While it is the undoubted rule that this court will review the action of a trial court in granting a new trial, yet before the same will be reviewed for the purpose of modifying such ruling thereon, there must be shown, or must clearly appear an abuse of discretion or arbitrary action on the part of the trial court, or it must be shown that the trial court manifestly erred upon some pure, simple and unmixed question of law. This rule was announced in the early case of Weller v. Western State Bank of Waukomis, 18 Okla. 478, 90 Pac. 877. The rule is stated in 20 Stand. Encyc. Prod. 645, as follows:

"In a clear case of abuse of discretion in the trial court, the appellate court will not hesitate to reverse the judgment and to correct the error."

See, also, the following cases: Woodmen of the World v. Thiebaud, 65 Kan. 332, 69 Pac. 348; Sanders v. Wakefield, 41 Kan. 11, 20 Pac. 518; White v. Chicago, R. I. & P. Ry. Co., 91 Kan. 526, 138 Pac. 589; Elvin v. Blubaugh, 89 Kan. 726, 132 Pac. 994; R. Connor Co. v. Goodwillie, 120 Wis. 603; Hughes v. South Carolina Light, Power & Ry. Co., 107 S. C. 501, 93 S. E. 187. The courts everywhere recognize the right of an appellate court to review the action of a trial court in sustaining motions for new trials where there has been an abuse of discretion or arbitrary action. Otherwise the complete right of appeal could be denied in most instances, and in fact all instances. For example, the court could repeatedly in the same cause set aside the verdict of the jury and grant a new trial on the insufficiency of the evidence, and thereby deprive the party who obtained the verdict the benefit of a complete right of appeal. In other words, to vest in the trial courts absolute discretion as to questions of fact or mixed questions of law and fact, would be an absolute barrier between the aggrieved litigant and the Supreme Court.

The present case does not fall within the rule of law disclosing arbitrary action, or manifest abuse of discretion in granting the new trial—although, considering the contemporaneous action of the court, the matter borders upon arbitrary action. However, we do not feel justified in disturbing the action of the trial court in sustaining the motion for new trial.

Regarding the court's action in sustaining the judgment notwithstanding the verdict, it was clearly error. First, as we have already stated, he was without authority to sustain that motion after having sustained the other. A careful reading of the cases relating to the point convinces us that the rule announced in the Ohio case, supra, is correct, and that the court may overrule both motions or overrule one and sustain the other. The court, however, is powerless or not authorized by law to sustain both motions.

Second, from the standpoint of merit, the court was in error in sustaining the motion for judgment notwithstanding the verdict. We could escape a discussion of this phase of the case, but it is one of the fundamental maxims of the law that public interest re-

quires that suits be not strung along by successive appeals for years. Considerable delay in legal proceedings in this state is unavoidable, but public policy regarding expediting litigation demands such action as will not increase delays or multiply appeals.

This leads us to the consideration of the merits of the non obstante judgment in the case. The trial court entered judgment notwithstanding the verdict on the ground or assumption that the pleadings failed to charge the defendant railway company with any acts of negligence independent of the acts of negligence primarily charged to the codefendant Hall, who was the servant of the defendant railway company. There is no contention that the petition did not allege a cause of action against the defendant Hall. In regard to the allegations charging the defendant railway company with a duty owing to plaintiff and a breach of that duty by the said railway company, in part, it is alleged:

"* * * That it was the duty of the defendant railway company, its master mechanic, boilermaker, foreman and defendant Hall, each of them, to furnish the plaintiff with an air motor free from defects and one which could be used with safety without endangering those using the same; and it was the duty of the defendants to have the proper apparatus consisting of a scaffold and other appliances on which to attach the said motor in doing the said work; that it was the duty of defendant Hall to see that the motor was properly attached in its various parts before giving orders to reverse the said motor; **but the plaintiff alleges that the defendants and each of them wholly disregarded their duties and furnished for the work above mentioned, an air motor which was defective and not a safe instrument with which to do the said work;** that this fact was known to the defendants and to each of them or could have been known to the plaintiff; that the said air motor had a defective knuckle in that the air motor was (when) reversed, would become disconnected, allowing the force to be applied to the motor itself, releasing the resistance offered by the rolls inside the flues, making it lightly (likely) to fly around and cause an injury to the person operating the said air motor; that the fact that the air motor was dangerous and was likely to cause an injury, **was known by the defendant railroad company,** its master mechanic, boilermaker, foreman, and defendant Hall, or could have been known to them by the use of ordinary care and inspection, but was not known to plaintiff. * * *" (Emphasis ours.)

There was no contention that the allegations in the pleadings were insufficient regarding the extent of the injuries.

No motion to make the petition more definite and certain was filed, nor was a demurrer interposed to the petition by either defendant.

The petition clearly states a cause of action against the railway company, based upon acts of negligence not alone chargeable to employee, Hall. The petition alleges: (1) The existence of a duty on the part of the railway company to plaintiff; and (2) a breach of that duty on the part of defendant railway company; (3) with certain resulting damages to plaintiff. It is the settled law of this state that a judgment notwithstanding the verdict cannot be rendered unless such judgment is justified from the pleadings, or unless there is a special finding of fact justifying the judgment.

The law on this particular phase of the case has been definitely settled in this state and elsewhere. The latest expression of this court on this point is found in the case of St. L. & S. F. Ry. Co. v. Bell, 134 Okla. 251, 273 Pac. 243, in which it was said:

"In the absence of special findings, the court is without jurisdiction to enter judgment notwithstanding the verdict, unless same is warranted by the pleadings. The court is not authorized to render such judgment because there is an entire failure of evidence to justify the verdict in favor of the prevailing party, or because the evidence shows that as a matter of law the court should have directed a verdict in favor of the losing party."

An exhaustive discussion of the application of the motion for judgment notwithstanding the verdict was made in the case of Foster v. Leftwich, 52 Okla. 28, 152 Pac. 583. In that case the author of the opinion quoted with approval from the case of Kirk v. Salt Lake City, 32 Utah 143, 89 Pac. 458, 12 L. R. A. (N. S.) 1021, as follows:

"The court has no authority to entertain a motion for judgment notwithstanding the verdict on the ground that there was a failure of proof as to some essential element of the cause of action; but that question must be raised by a motion for nonsuit, a request to direct the verdict, or, after verdict, by a motion for a new trial." (Syl.)

Further, quoting from the body of the opinion, the court said:

"It is equally manifest that after the court had submitted the case to the jury, and a verdict had been returned upon insufficient evidence to sustain it, if such be the fact, the only way the trial court could have corrected the error was by a motion for a new trial."

To the same effect is McAlester v. Bank of McAlester, 95 Okla. 193, 218 Pac. 839.

It is the settled law of this state that in an action in tort against a master and servant, where acts of negligence against the master are solely those committed by the servant or agent; that is, without any actual concurring acts of negligence of the principal except the bare fact of the relationship of principal and agent or master and servant, that a verdict rendered for the servant will exonerate the master from liability. C., R. I. & P. Ry. Co. v. Austin, 43 Okla. 698, 144 Pac. 1069; C., R. I. & P. Ry. Co. v. Reinhart, 61 Okla. 72, 160 Pac. 51; St. L. & S. F. Ry. Co. v. Dancey, 74 Okla. 6, 176 Pac. 209.

The converse of the above rule of liability is that, where the acts of negligence of the servant are concurred in by the master, or if the independent acts of negligence of the master concur with those of the servant, and there is evidence to support the active concurring negligence of the master, verdict against the master will stand although there is a failure to find a verdict against the servant. St. L. & S. F. Ry. Co. v. Simmons, 116 Okla. 126, 242 Pac. 151, and cases therein cited.

The rule first above stated, relating to liability based solely upon the maxim respondeat superior, has no application to this case. In the present case negligence is charged in the petition, which negligence is not attributable alone to the servant or employee, Hall. It is alleged in the petition that defendant railway company failed to furnish plaintiff a reasonably safe tool (air motor) with which to work, and failed to furnish a reasonably safe place to work. That duty was not delegable, and the petition plainly charged acts of negligence against the railway company, independently of the acts of negligence of its employee, Hall. Cosden Pipe Line Co. v. Berry, 87 Okla. 237, 210 Pac. 141, and cases therein cited.

Furthermore, a judgment notwithstanding the verdict should never be granted except in a clear case. 2 Tidd's Practice, 922. Especially is this true when the petition or pleadings have not been attacked by a motion, or by a demurrer, or by both. When the pleadings assailed in a motion for judgment notwithstanding the verdict are not demurred to or attacked by motion, the motion for judgment can be sustained only where it would be impossible under the circumstances for a given case to state a cause of action. That rule is fundamental.

For the reasons herein stated, the action of the trial court in sustaining defendant's motion for a new trial is affirmed; and the action of the trial court in sustaining defendant's motion for judgment notwithstanding the verdict, and rendering judgment for defendant in the case, is hereby reversed, with directions to the trial court to proceed not inconsistently with the views herein expressed.

BENNETT, HERR, JEFFREY, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (2) 20 R. C. L. p. 228; 4 R. C. L. Supp. p. 1341; 5 R. C. L. Supp. p. 1091; 6 R. C. L. Supp. p. 1191. (3) anno. 12 L. R. A. (N. S.) 1021; L. R. A. 1916E, 828; 15 R. C. L. p. 606; 3 R. C. L. Supp. p. 474. (4) 18 R. C. L. p. 777; 5 R. C. L. p. 1000. See "Appeal and Error," 4 C. J. §2813, p. 832, n. 47. "Judgments," 33 C. J. §177, p. 1188, n. 78, 81. "Master and Servant," 39 C. J. §1161, p. 923, n. 64; §1602, p. 1386, n. 83. "New Trial," 46 C. J. §15, p. 66, n. 16; §465, p. 408, n. 19.