TEXAS CO. v. ALRED.

No. 22336.   Dec. 12, 1933.

Rehearing Denied Jan. 9, 1934.

J. H. Hill, John R. Ramsey, B. W. Griffith, Sol H. Kaufman, and Hamilton, Gross & Howard (Harry T. Klein, of counsel), for plaintiff in error.

Frank T. McCoy, John R. Pearson, and John T. Craig, for defendant in error.

BAYLESS, J. L. W. Alred, hereafter called plaintiff, filed a suit in the district court of Osage county, Okla., against the Texas Company, a corporation, hereafter called defendant, and C. H. Carpenter and R. N. Truscott, its employees. The trial court directed a verdict for Carpenter and Truscott, but submitted the case to the jury as to the Texas Company, and the jury returned a verdict in favor of Alred for $3,685.

Plaintiff's petition, in substance, alleged that he was the owner of certain described real estate upon which he grazed his cattle. That the Texas Company owned and operated an oil and gas mining lease on certain land near by, and that its codefendants were its servants, charged with the active superintending control of the leased premises. That by reason of certain negligence of all of the defendants, salt water and other deleterious substances were permitted to escape from said leased premises into Little Hominy creek, a fresh water stream, and the fresh water supply for Alred's cattle, whereby said water supply was poisoned and polluted. That this condition existed between the dates of January 27, and February 5, 1930, during which time, without his knowledge or consent, this water was drunk by his cattle and they were injured thereby. The damage resulting is then detailed and the total damage of $10,295 was asked for.

The Texas Company admitted the ownership and operation of the lease, but denied that the cattle of the plaintiff were in anywise injured as a result of the operation of said lease. The Texas Company also alleged positively that it had at all times so operated the lease as to prevent any one else being injured thereby and to prevent the escape of salt water, etc.

The Texas Company assigned 31 errors in its motion for a new trial. It then makes 34 assignments of errors in its petition in error. In its brief there are 24 assignments of error, but these are argued under five assignments of errors with subheads. It is impracticable to ascertain whether these various errors complained of, constantly reduced in number, are always the same in language or cover the same points, but we assume that the assignments under which the argument is presented are fairly comprehensive and complete, and therefore set them out:

"Assignment 1, proposition No. 1. Plaintiff bases his entire right to recover on the specific allegations of the wrongful, willful, and unlawful acts of negligence and fault on the part of the codefendants C. H. Carpenter and R. N. Truscott; therefore, he cannot depend upon any other grounds for recovery.

"Assignment 1, proposition No. 2. The Texas Company, the corporate defendant, if liable at all, was liable upon the principle of respondeat superior, hence the judgment in favor of the two servants, C. H. Carpenter and R. N. Truscott, is a complete acquittance of the corporate defendant, the Texas Company, and is tantamount to a judgment in its favor.

"Assignment 1, proposition No. 3. The defendants Carpenter and Truscott 'were agents of the defendant the Texas Company. If there was liability to the plaintiff, the liability of the agents was primary, and the liability of the principal, the Texas Company, was secondary; the exoneration of the agents, Carpenter and Truscott, exonerates the principal, the Texas Company.

"Assignment 1, proposition No. 4. If the Texas Company be made to respond to damages on account of the acts of its servants and agents, it is entitled to be indemnified by the servants or agents; the servants and agents having been acquitted of the offense, charged in plaintiff's suit, the Texas Company is entitled to be exonerated.

"Assignment 2. The trial court erred in submitting to the jury the question of permanent injury and damage to the cattle alleged to have been damaged by drinking the salt water, and in refusing to direct a verdict for the defendant the Texas Company, and in overruling the motion for new trial based upon such error.

"It was error for the trial court to submit the proposition of permanent injury to these cattle to the jury for the reason that there was no competent, relevant or material evidence proving or even tending to prove permanent injury to any of the cattle, and there was no evidence except probably some inferences that might have been drawn from the evidence of the witnesses,

Luther Alred, Fred Rowe, and Dr. Ketcham, that some of the cattle were permanently injured, but, as we shall point out. this was not evidence, but mere conclusions on the part of these witnesses; such being the case it was error for the trial court to refuse to give the defendant's requested instruction No. 1 (C.-M. 1023) and, of course, it was equally the duty of the trial court to sustain the demurrer to the plaintiff's evidence interposed by the defendant.

"It was also error for the trial court to overrule and deny a motion for new trial based upon these errors.

"Assignment 2B. Having shown by the above authorities that the evidence of the nonexpert witnesses was incompetent and inadmissible for the purpose of even attempting to prove permanent injuries, it was error for the court to give instruction No. 4 when there was no competent evidence upon which to sustain the claim of permanent injury to these cattle.

"Assignment No. 3 The evidence given by the plaintiff, Alred, and by his witnesses, Rowe and Ketcham, as to the claimed effect of salt water causing permanent injury to these cattle was incompetent and inadmissible for three reasons:

"First: As we have heretofore rather fully pointed out, the witnesses, Alred and Rowe, not being expert and having no scientific knowledge upon which to base an opinion, were incapable of expressing an opinion, or testifying to any conclusion with reference to the alleged permanent injuries to the cattle.

"Second: The witness, Ketcham, being a veterinary, made no sufficient investigation upon which he could base an opinion, in that his entire examination of the herd of cattle was a mere casual observation and no hypothetical question was submitted to him upon which he was asked to give an opinion.

"Third: The evidence of these witnesses, tending to prove permanent injury and consequent damage to these cattle, was not an expression of an opinion, but was an attempt to testify as to an ultimate fact, which was within the exclusive province of the jury to determine.

"Assignment No. 4. Error of the court in abuse of discretion in limiting and denying this plaintiff in error the right to cross-examine the plaintiff's witnesses and each of them as to relevant, competent. and material matters brought out on direct examination.

"Assignment No. 5. The conduct of the plaintiff, Luther Alred. in his refusal not only to point out to the defendant the Texas Company, and its claim agent, and those acting with and for it, the cattle claimed

to have been injured, by his affirmative threats against the claim agent, and those acting with him, which prevented the defendant from being able to ever see or positively identify the cattle claimed to have been injured, amounted to a legal fraud upon the defendant the Texas Company, which prevented it from fairly presenting a defense in this case."

We will direct our attention first to assignment of error No. 1, propositions 1, 2, and 3. We believe that these propositions raise a question of law upon the cause of action attempted to be pleaded and proved by the plaintiff.

The defendant contends that the rule of law applicable to its liability is that commonly referred to as "respondeat superior," only. The defendant contends it cannot find in the plaintiff's pleadings any allegation of an independent responsibility or liability on its part. It also contends that it is charged with liability in this case solely and only by reason of its responsibility for the acts of its servants.

A consideration of this issue has caused us to decide it adversely to the contention of the defendant. It occurs to us that it is so nearly analogous to the case of Spruce v. C., R. I. & P. Ry. Co., 139 Okla. 123, 281 P. 586, that a comparison between the pertinent portions of the pleadings in this case and the discussion of the court in that case will support our opinion herein.

The portions of the plaintiff's petition quoted by the defendant in its brief are not complete enough, and we set out at this point, in totidem verbis, paragraphs 4 and 5 of the plaintiff's petition:

"4. Plaintiff further states that at the time of the wrongful acts of the defendants herein complained of. the defendant the Texas Company was the owner of, operating, controlling and conducting oil and gas mining operations upon the northeast quarter of section 29, township 25, range 8, Osage county, Okla.. and at said time the defendants C. H. Carpenter and R. N. Truscott were in the employ of said defendant the Texas Company, and had acting, superintending control over said operations and the manner of conducting the same for and on behalf of said defendant the Texas Company.

"5. Plaintiff further states that on or about the 27th day of January, 1930, said defendants, and each of them, wrongfully and unlawfully and in direct violation of section 7969. C. O. S. 1921, caused and permitted oil. salt water, and other deleterious substances and waste to escape from said oil and gas mining operations. to run

over the surface of the land and into a certain draw leading from said oil and gas mining operations and which empties into a creek known as Little Hominy creek; that said Little Hominy creek flows in a general direction from northwest to southeast through that part of plaintiff's said pasture described as the southeast quarter of section 10, township 24, range 8, Osage county, Okla., and was, prior to its pollution by said defendants, the fresh water supply for plaintiff's live stock in said pasture; that said oil, salt water, waste and other poisonous substances were allowed and permitted by said defendants to enter the fresh water in said Little Hominy creek, thereby poisoning and polluting the same to such an extent that the water in said creek where same flows through plaintiff's pasture became and was highly dangerous and injurious to live stock drinking thereof; that said poisonous substances became and were a continuing nuisance, a continuing trespass, and a dangerous instrumentality created by the defendants, and each of them, and caused and permitted by them to enter plaintiff's said pasture and to be and remain in said creek exposed to plaintiff's cattle."

Four separate charges or statements of negligence and wrongful acts are charged in paragraph 5: (1) Causing or permitting the deleterious substances to escape into the stream; (2) pollution of Little Hominy creek; (3) pollution of such stream to the extent of making its water poisonous and dangerous; and (4) that such conduct constitutes a trespass or nuisance which was permitted to remain until plaintiff's cattle were exposed to it. In connection with each separate charge it is said: "Said defendants, and each of them"; "by said defendants"; "by said defendants"; "by the defendants and each of them." In each instance it is a charge of a primary and individual act on the part of each and every defendant. Nowhere therein is it said in words or in effect, "The Texas Company, by and through its servants, agents or employees," or "The Texas Company, acting by and through its servants, agents and employees"; or language of a similar import.

We quote now our discussion in Spruce v. C., R. I. & P. Ry. Co., supra:

"This leads us to the consideration of the merits of the non obstante judgment in the case. The trial court entered judgment notwithstanding the verdict on the ground or assumption that the pleadings failed to charge the defendant railway company with any acts of negligence independent of the acts of negligence primarily

charged to the codefendant Hall, who was the servant of the defendant railway company. There is no contention that the petition did not allege a cause of action against the defendant Hall. In regard to the allegations charging the defendant railway company with a duty owing to plaintiff and a breach of that duty by the said railway company, in part, it is alleged:

"'* * * That it was the duty of the defendant railway company, its master mechanic, boilermaker, foreman and defendant Hall, each of them, to furnish the plaintiff with an air motor free from defects and one which could be used with safety without endangering those using the same; and it was the duty of the defendants to have the proper apparatus consisting of a scaffold and other appliances on which to attach the said motor in doing the said work; that it was the duty of defendant Hall to see that the motor was properly attached in its various parts before giving orders to reverse the said motor; but the plaintiff alleges that the defendants and each of them wholly disregarded their duties and furnished for the work above mentioned an air motor which was defective and not a safe instrument with which to do the said work; that this fact was known to the defendants and to each of them or could have been known to the plaintiff; that the said air motor had a defective knuckle in that the air motor was (when) reversed, would become disconnected, allowing the force to be applied to the motor itself, releasing the resistance offered by the rolls inside the flues, making it lightly (likely) to fly around and cause an injury to the person operating the said air motor; that the fact that the air motor was dangerous and was likely to cause an injury, was known by the defendant railroad company, its master mechanic, boilermaker, foreman, and defendant Hall, or could have been known to them by the use of ordinary care and inspection, but was not known to plaintiff. * * *'

"There was no contention that the allegations in the pleadings were insufficient regarding the extent of the injuries.

"No motion to make the petition more definite and certain was filed, nor was a demurrer interposed to the petition by either defendant.

"The petition clearly states a cause of action against the railway company based upon acts of negligence not alone chargeable to employee Hall. The petition alleges: (1) The existence of a duty on the part of the railway company to plaintiff; and (2) a breach of that duty on the part of defendant railway company; (3) with certain resulting damages to plaintiff. It is the settled law of this state that a judgment notwithstanding the verdict cannot

be rendered unless such judgment is justified from the pleadings, or unless there is a special finding of fact justifying the judgment."

We therefore hold that propositions 1, 2, and 3 of assignment of error No. 1 are without merit.

We hold that proposition No. 4 of assignment No. 1 depends entirely upon an answer to the three previous propositions contrary to that given by us. This being so, proposition No. 4 of assignment of error No. 1 also is without merit.

We next consider assignment of error No. 2, division "a". This division of the assignment involves the discretion of the trial court in judging the competency of certain lay witnesses to give their opinions concerning the condition of the cattle and the temporary or permanent character thereof. The defendant cites the record time and again in support of its argument thereon. We have considered this argument carefully. We believe that the trial court was unusually careful to see that the plaintiff properly qualified his lay witnesses as to their experience and knowledge and means of observation before permitting them to give the testimony of which the defendant complains. We are unable to discover any instances of an abuse of discretion in the trial court's rulings as to the competency of these witnesses.

The defendant is in error when it says the evidence does not show that the injuries were permanent. Witness after witness said, in effect, cattle which have drunk salt water never fully recover, they are ruined for life, and other statements of similar tenor.

We are committed to the rule that lay witnesses who qualify themselves to the satisfaction of the trial court concerning their knowledge of the subject in general and experience in general and means of observation and knowledge whereof they speak in particular, are competent to give their opinions, and that such opinions are evidence sufficient to support a verdict conforming thereto. Central Petr. Co. v. Lewis, 98 Okla. 26, 224 P. 186; Bell v. Tackett, 134 Okla. 164, 272 P. 461, and other cases. We therefore hold this division of this assignment of error is not well taken.

As to division "b" of this assignment of error, we can only say that we find no issue made in the pleadings of avoiding the consequences, mitigating the damages or similar defenses. No request was made of the trial court to instruct with regard thereto,

if the evidence justified it, and the pleadings were considered amended to conform thereto. We feel that such matters are defensive purely and must be presented and heard by the trial court before they can be urged here. We therefore overrule this division of this particular assignment of error.

Assignment of error No. 3. The argument of the defendant concerning this assignment of error is ingenious, but reacts upon itself. We have heretofore held that the opinions of the experts and lay experts were admissible upon the issue of injuries, and their causes, and the likely term of their existence. The admission of such evidence presupposes that the subject is one beyond the average intelligence of the average man or jury. It cannot be said that the province of the jury is invaded by such opinions when the very lack of knowledge and experience of the jury and ordinary men with relation thereto necessitates resort to such evidence. What if the things about which expert witnesses express opinions are the ultimate facts to be determined by the jury? It does not thereby result that the opinions expressed by the experts upon such ultimate facts are binding upon the jury. Indeed there may be conflicting opinions upon the same question. Again, if there be no conflict upon this question, or only opinions on the one side, the jury may not be convinced thereby and may ignore them altogether. See what we said in Roxana Petr. Corp. v. City of Pawnee, 155 Okla. 141, 7 P. (2d) 663, concerning the purpose of trials, and the reason for the admission of opinions of lay experts becomes clear. We find no merit in this assignment of error.

We now take up the discussion of the fourth assignment of error. This assignment has brought on more work and has given us more difficulty in its solution than any of the other assignments. The defendant complains of too great restraint placed upon it by the trial court in its cross-examination of the plaintiff's witness. Instances are cited in its brief touching the testimony of the last four of the plaintiff's witnesses.

It is our opinion that the plaintiff's asserted basis of recovery was the death of one animal and the permanent depreciation of value in others. Despite the argument of the defendant to the contrary, it is our opinion that each witness who gave an opinion as to the likely duration of the injuries to the cattle made clear, each by language peculiar to himself, that he con-

sidered such injuries permanent in character. Any questions touching upon the condition of these cattle at any time from the inception of their illness to the date of the trial, and any circumstances relating to the witnesses' knowledge and observation of them, would be admissible in evidence and therefore could be brought out on cross-examination. While cross-examination should not be untrammeled, the discretion of the trial court should be liberally indulged in favor of the party cross-examining. We believe the rule as announced by us in Hand v. Hickok, 98 Okla. 125, 224 P. 505, Woods v. Faurout, 14 Okla. 171, 77 P. 346, and other cases cited in the first enumerated case, is complete enough to guide trial courts in this respect.

A study of the questions, objections and rulings of the court thereon, complained of, and the surrounding questions and answers in the instances cited by the defendant, convinces us that the trial court placed too much restraint upon the defendant in the cross-examination of those witnesses. However, in some of the instances cited where answers were forestalled by the court's ruling, the same answers were later admitted and the same information elicited; in some instances cited, the matters sought were not material; and, in other instances, the court ruled erroneously in excluding answers to the questions asked. We do not feel justified in reversing a judgment because of errors committed for the sake of error alone. In those instances where the court erroneously excluded answers, but on later occasions, when the same answers were admitted and the same information given, the defendant made no further inquiry in that direction, but immediately proceeded to other points. In those instances where the court erroneously excluded the answers and the information sought therefrom did not get into the record at a later point, the defendant did not pursue the matter further by explaining to the trial court the reasons for such questions and the desirability of answers, or by making a showing of what the witnesses might be expected to testify if known, or wherein his answers the one way or another might add to, explain, detract from, or affect the testimony theretofore given by such witness or other witnesses, or affect the issues of the case. We see in our own minds several purposes for asking such questions, some legitimate under the issues, some not. The defendant does not explain in its brief what the purpose was of the questions nor wherein it was prejudiced by the denial of answers thereto, except that it was denied the undoubted privilege of receiving them. We hold, therefore, that the error of the court in this respect was harmless.

We next take up assignment of error No. 5. This involves the right of the defendant to have an inspection of the alleged injured cattle prior to the trial and the conduct of the plaintiff with relation thereto. The argument of the defendant on this point is more consistent and is pursued with more purpose of accomplishment than was the preliminary conduct of the defendant upon which the argument is based. The plaintiff boldly asserts that no legal right existed in the defendant for the inspection of these cattle at any time before the trial or thereafter, and that if the plaintiff wholly excluded the defendant or anyone else from examining such cattle, he was entirely within his rights in so doing. Authority for the examination or inspection of documents pertaining to a lawsuit is provided by statute (sections 316-317, O. S. 1931), as well as means for the enforcement thereof. We believe the general rule is that a litigant may not be forced to submit his person to examination or inspection, in a case properly involving it, against his wishes, but that such demand may be made, and the refusal thereof by the litigant may go to the jury for its effect upon his good faith, credibility, etc. We cannot see why a rule should exist which would utterly deprive a litigant of the right to examine real or personal property of his adversary involved in the action, upon timely application to the court therefor, but this question is not squarely presented at this time because of the state of the record before us. The record indicates that the defendant, on more than one occasion, went upon the plaintiff's property or upon property where his cattle were located, and took pictures thereof without applying to the court for authority therefor, if such authority could properly be granted, or without applying to the plaintiff for his permission. The plaintiff in effect admits that after repeated, and, as he says, surreptitious visits by the defendant, in violation of his asserted rights, he did drive the defendant's agents from his premises and refuse them admission thereto thereafter. It appears that when the pictures taken of certain cattle were introduced in evidence the plaintiff denied that these were the cattle in question. Therefore, the complaint which the defendant actually makes is not that it was prevented from inspecting the cattle, but that it was probably misled concern-

ing which were the actual cattle and thereafter denied access to them. On the morning of the trial of the case, of which the defendant undoubtedly had previous notice of the setting, the defendant presented an application to the trial court for authority to inspect these cattle. The record shows that the trial court did not deny this application upon a consideration of the question of law on its merits, but rather ruled that the application came too late in that the case was then practically ready for trial, although not yet called. No showing was then made upon which we can judge the discretion of the trial court in making such a ruling, and we therefore hold that the trial court did not abuse its discretion.

The judgment of the trial court is therefore affirmed.

RILEY, C. J., CULLISON. V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, and WELCH. JJ., concur. BUSBY, J., absent.