FRANKLIN DRILLING CO. et al.
v. JACKSON.

No. 33458.    April 25, 1950.

*217 P. 2d 816.*

Monnet, Hayes & Brown, of Oklahoma City, for plaintiff in error Franklin Drilling Company.

Gilliland, Ogden, Withington, Shirk & Vaught, of Oklahoma City, for plaintiff in error Ohio Oil Company.

C. H. Bowie, of Pauls Valley, for defendant in error.

WELCH, J. The Ohio Oil Company, owner of an oil and gas mining lease, contracted with the Franklin Drilling Company to drill a well on a certain tract of land covered by the lease. In the course of the drilling operations conducted thereunder, oil, gas, and salt water were encountered. These substances sprayed from the well and over an adjoining tract of land held and occupied by Bethel Jackson under an agricultural lease. From the activity of the well Jackson suffered a loss of growing crops and sustained injury to his unplanted land and to his farm equipment, and suffered the loss of the use of living quarters and other rights and privileges under his agricultural lease.

Under this state of facts Jackson recovered judgment as against the drilling company and the oil company.

The drilling company asserts the plaintiff failed to establish his right to recover as against it. Reference is made to the general rule that a contractor who complies with the provisions of his contract is not liable for injuries resulting from conditions creat-

ed by its performance, unless fault on his part is proved.

The oil company asserts the evidence was insufficient to support a judgment against it. Reference is made to the general rule that an employer is not liable for the negligent acts of an independent contractor in the performance of the contract.

The drilling company and the oil company each assert that the other was liable to the plaintiff under the terms of 52 O. S. 1941 §296.

It has repeatedly been held that by virtue of the statute the owner of an oil and gas well may be held liable for damages to another's premises occasioned by oil, gas or salt water spraying from the well without proof of any specific acts of negligence on the part of the well owner. Comar Oil Co. v. Lawrence, 151 Okla. 187, 3 P. 2d 196; Texas Company v. Mosshamer, 175 Okla. 202, 51 P. 2d 757; I. T. I. O. Co. v. Graham, 174 Okla. 438, 50 P. 2d 720; C. L. McMahon, Inc., v. Lentz, 192 Okla. 153, 134 P 2d 563; and other cases.

In the Mosshamer case, supra, the court said:

"Since the adoption of the Revised Laws of 1910, this statute has been treated as a penal statute and also as a remedy for the benefit of all persons who may suffer injury by violation of its terms. Since the law positively requires that all waste oil and refuse from tanks or wells shall be drained into proper receptacles and be immediately burned or transported from the premises and in no case shall the same or salt water be permitted to flow over the land, it has been repeatedly held that a failure to perform the duty thus enjoined upon the operator of an oil well is negligence per se, and no other negligence need be pleaded or proved. . . ."

"The statute prohibits, and negligence as a matter of law is implied, . . ."

In the Indian Territory Illuminating Oil Co. case, supra, it was said:

" . . . the duty of preventing the salt water from escaping from the master's premises was a nondelegable duty."

In the McMahon case, supra, the court said:

"The statute is a penal one and a violation thereof renders the offender liable for all damages proximately caused thereby. . . . In an action to recover damages for a violation of the statute the issues drawn are whether the statute has been violated, and, if so, whether damage has proximately resulted therefrom and the degree of care exercised and the extent to which the statute has been violated are not in issue. . . ."

Clearly the owner of an oil and gas lease who contracts for and procures the drilling of a well is thereby no less bound to prevent oil, gas or salt water from escaping from the well to other premises. It is equally apparent that when a contractor has charge of the operations of a well and substances therefrom escape to other premises, the statute is no less violated. Under the statute and as affects a third party such contractor has an equal duty with the owner of the well of preventing gas, oil or salt water from escaping from the premises.

We hold that when oil, gas or salt water flows or sprays from a well over the surface of land surrounding premises, 52 O. S. 1941 §296 is violated and negligence as a matter of law is implied and imputed to those having charge of the operations of such well and to the owner of the well and such owner, or a contractor in charge, either or both may be held to answer to a third party for the damages resulting from such violation of the statute without proof of specific acts of negligence.

The oil company asserts that the trial court erred in refusing it permission to file a cross-petition against the drilling company for the recovery of such

amount for which judgment is obtained against the oil company herein. It was the position of the oil company that the drilling company was liable to it for all acts of carelessness and negligence in the operation of the well resulting in the escape of substance therefrom with resulting judgment against the oil company.

In Tracey v. Crepin et al., 40 Okla. 297, 138 P. 142, the court, in the second paragraph of the syllabus, stated:

"A cause of action set up in a cross-bill must be germane to the original controversy; and where a defendant seeks to set up new and distinct matter, not maintainable under the provisions of the Code as a counterclaim, unless such matter is involved in a proper determination of the subject-matter of the original suit, a defendant will be required to litigate it in a separate action."

It is apparent that the question of liability of the drilling company to the oil company was outside the issues presented by the plaintiff and wholly unnecessary to a determination of the plaintiff's right of action against either or both of the defendants. The court did not err in denying the application to file the cross-petition.

The drilling company asserts that the amount of damages awarded was excessive.

The record reflects that the well sprayed oil, gas or salt water during a period of 60 days while operation of the well was under the management of the drilling company. Thereafter, and when the well was being operated by the oil company, the well was opened and sprayed substances over the premises of the plaintiff.

The trial court found the extent of the plaintiff's damages from the well spray to be $1,905, of which $1,810 accrued during the 60-day period of the drilling company's operations, and $95 thereafter; that the drilling company and the oil company were liable for $1,810 damages and that the oil com-

pany alone was liable for an additional $95 damages. Judgment was entered accordingly.

The separate items of damages found by the court, and as stated in the journal entry of judgment, include:

"Item No. 1. For value of oats $600.00;

"No. 2. For value of cotton and/ or loss of rental value of cotton land $200.00;

"No. 3. For value of Higear (sic) and/or loss of rental value of Higear (sic) land $100.00;

"No. 4. For value of cane and/or loss of rental value of cane land $100.00."

The record reflects that cotton, hegari and cane were planted by the plaintiff after the drilling company had ceased management of the well. It is asserted that the drilling company could not be held liable for damages to growing crops which were planted after its management of the well had ceased and that the judgment is excessive as against the drilling company to the extent of the amounts shown in items 2, 3 and 4 above.

In Garrett v. Haworth, 183 Okla. 569, 83 P. 2d 822, in the seventh and eighth paragraphs of the syllabus, it is said:

"In an action for damages for injury to growing crops, the measure of damages is the value of the unmatured crops at the time of the injury. In arriving at such value, it is proper to show by evidence the probable yield under proper cultivation, and the value of such probable yield when matured, gathered, prepared, and ready for sale; also the probable cost of proper cultivation necessary to mature the crop, as well as the costs of gathering, preparation, and transportation to market. The difference between such probable value in the market and the cost of finishing the cultivation, and gathering, preparing and transportation to market, will represent the value at the time of loss."

"The measure of damages for the anticipated loss of crops which plaintiff

was prevented from planting by reason of the damage caused by the defendant, is the reasonable rental value of the land for the season."

The well was first brought under control and ceased spray of plaintiff's premises on May 29th, and thereafter plaintiff planted 13 acres of his land to cotton, 15 acres to hegari, and 15 acres to cane. These plantings commenced growth and were sprayed by the well, then under the sole management of the oil company. The plantings never matured. There was testimony concerning the rental value of these lands, ranging from $3 per acre for all the cultivatable lands to $25 per acre for the cotton land, and to $15 per acre for the other planted land. There was testimony concerning the normal probable yield and value of such yield of such lands planted to these crops, and testimony of probable costs of finishing harvesting and marketing. However, this testimony does not appear material as affecting the drilling company. There was testimony to the effect that the plantings after May 29th were too late in the season to base an expectancy of an average year's yield from the land, or other than a light yield under best conditions.

It is apparent that this last mentioned testimony was the basis for the trial court's finding of $95 damages as a sole liability cf the oil company. These damages accrued after the drilling company had ceased operation of the well, and after the oil company had assumed management of the well. The finding is to the effect that the major damage to the land occurred prior to the plantings, in that timely planting was prevented.

We think the testimony as to the rental value of the cultivatable land and as to the effect of the well on such land as to prevent proper planting is sufficient to support the finding of the trial court as to items 2, 3 and 4.

As pertains to the court's finding of $600 for the loss of the growing oat crop, the record reflects testimony of maximum probable yield of 920 bushels and maximum probable value of 75c per bushel, or in cash product $690. The testimony or probable cost of harvest and marketing in the minimum and as itemized reaches a total of $121.90, which applied to $690 leaves a balance of $568.10. However, the plaintiff testified in explanation of probable costs of harvesting and marketing that he owned harvesting and marketing machinery and facilities, and it was shown that in use of his own machinery and labor the probable cost of harvest and marketing could be reduced to a total of less than $100.

We find evidence to support the trial court's finding of $600 damage for loss of the growing oat crop.

Challenge is made of items of damages found by the court and stated: "Loss of pasture $200.00, tractor idleness $125.00, increased expense $200.-00." Evidence to support these findings is reflected in the plaintiff's testimony.

The plaintiff testified to the effect that salt water and other substance killed the grass on his pasture lands; that he owned 13 head of cattle, five being milk cows, and that the grass had been adequate to support his cattle without other feed; that after the spray and during regular pasturage season his feed costs had been $250; that due to the well's activity he was unable to use his tractor for a period of 25 days, that in use of the tractor he made $1.50 per hour and a net profit in excess of $5 per day; that during a period of 60 days he was compelled to stay away from his premises and the living quarters thereon most of the time, and was away from his home 25 full days; that during the period and when he was there, or at his home, with a change of wind direction from the well, he would be compelled to leave; that aside from nuisance, his necessary and added expense in travel and abiding on other premises was $200.

Other items of damage found by the court and included in the total sum for which the judgment was entered are not disputed.

The judgment is affirmed.

DAVISON, C. J., ARNOLD, V. C. J., and CORN and O'NEAL, JJ., concur.

LUTTRELL, J., concurs as to Ohio Oil Company and dissents as to Franklin Drilling Company.

HALLEY, J., concurs in part and dissents in part. GIBSON and JOHNSON, JJ., dissent.

GIBSON, J. (dissenting). I concur in the affirmance of the judgment against the Ohio Oil Company, but cannot agree with the majority opinion in affirming the judgment against Franklin Drilling Company.

The basis of the latter affirmance is declared to be that the positive duty imposed by Tit. 52 O. S. 1941 §296, upon the operator is also imposed upon the drilling company. Such imposition is said to arise because the drilling company was in charge of drilling the well out of which the escape of oil, etc., arose.

The reasoning upon which the conclusion is reached is thus stated:

"Clearly the owner of an oil and gas lease who contracts for and procures the drilling of a well is thereby no less bound to prevent oil, gas or salt water from escaping from the well to other premises. It is equally apparent that when a contractor has charge of the operations of a well and substances therefrom escape to other premises the statute is no less violated. Under the statute and as affects a third party such contractor has an equal duty with the owner of the well of preventing gas, oil or salt water from escaping from the premises."

The reason the operator of the lease is not absolved from the duty imposed by said section 296 is, as recognized in the opinion, because the duty so imposed is nondelegable. 27 Am. Jur.

526, §49; Shearman and Redfield on Negligence (R. E.) vol. 1, p. 412, sec. 176; Minnetonka Oil Co. v. Haviland, 55 Okla. 43, 155 P. 217 (also cases cited in the opinion). Since such duty of the operator cannot by contract be imposed upon a drilling company, such duty of the latter to prevent the escape, regardless of any want of care or power to prevent it, must arise by force of the statute. It is held to so arise because the drilling company was in charge of the drilling of the well.

No authority is cited that lends support to the idea that the absolute duty imposed under the aforesaid section applies to the drilling company as well as to the Ohio Company. The statute does not so declare, and we see no reason for so holding. We have repeatedly held that the duty imposed thereby upon the operating company is mandatory, nondelegable, and that the fact of the escape of oil gave rise to the liability independently of the fact of actual negligence. Magnolia Petroleum Co. v. Ford, 183 Okla. 14, 79 P. 2d 588. We have never had occasion to consider whether the section is applicable to a servant or to an independent contractor of the operating company engaged in creating the condition out of which the escape of the oil or salt water arose. However, we have tacitly recognized that the section has no such mandatory application to such servants of the operating company by affirming the judgments of trial courts wherein it was held that such servants, who were not guilty of any actual negligence, were not liable under the statute. Indian Territory Illuminating Oil Co. et al. v. Graham et al., 174 Okla. 438, 50 P. 2d 720; Texas Co. v. Taylor, 178 Okla. 21, 61 P. 2d 574; Texas Co. v. Alred, 167 Okla. 128, 28 P. 2d 556. The oil company is liable in event of the escape without proof of negligence because the obligation of the statute is impressed upon the right to produce and is justified in law because the exercise of the right entails an invasion of the rights of others when the escape occurs.

The contractor is not so liable because to so hold is to credit the statute with imposing the liability as a condition upon the execution of a lawful contract in a lawful manner. The mere fact of the contractor's control, which can relate only to the method of the execution of the contract, can have no bearing upon such liability where the method itself is not material thereto. It is that control which is an incident to the right to produce, and not that of others, whether they be contractors or servants whose control goes merely to the method of performance of the work done in furtherance of the right of the producer, that bespeaks the responsibility. To place the responsibility on any control short of that would make possible the liability of all persons engaged in the work, for each one acting must exercise some control and a single act may be the efficient or a contributing cause. If negligent, the one so acting is liable for the violation of his duty. In the absence of negligence, the privilege of working for another does not in law entail responsibility for the other's liabilities.

A sufficient basis for the imposition of liability independently of negligence upon the operator is that he has the right to elect whether to drill or not and it is he who will enjoy the fruits of the enterprise. In other words, the liability is made a condition upon the exercise of the right and the mere fact of the escape is made an act of negligence to afford a basis for recovery. The drilling company as a contractor is exercising no right within the purview of the statute. To undertake to establish his wrong on the theory that the mandatory duty of the statute is applicable to him, under the circumstances, is to predicate the obligation upon what, in effect, would be a legislative fiat because it would impose a liability upon one without fault for the benefit of another without justifiable reason therefor. (11 Am. Jur. 1204, §375).

The imposition of such liability, without sufficient reason, is no less a violation of the Due Process Clause of the Constitution than would be the taking of property without due process.

LUTTRELL and JOHNSON, JJ., concur in these views.

HALLEY, J. (concurring in part and dissenting in part). I agree with the majority opinion in holding both defendants liable, but I do not believe that the Franklin Drilling Company is liable under section 296, Title 52, O. S. 1941, for the reason that the reading of that statute, which is as follows:

"No inflammable product from any oil or gas well shall be permitted to run into any tank, pool or stream used for watering stock; and all waste of oil and refuse from tanks or wells shall be drained into proper receptacles at a safe distance from the tanks, wells or buildings, and be immediately burned or transported from the premises, and in no case shall it be permitted to flow over the land. Salt water shall not be allowed to flow over the surface of the land,"

shows clearly that it was intended to apply only to those persons who are the owners or the operators of the oil property. It is intended primarily to cover a situation where these products are permitted to flow over the land of another, and to prevent this was the duty of the lessee and not of the drilling contractor.

In my opinion, the drilling company is liable under section 6 of art. II and section 23 of art. II of the Oklahoma Constitution, and under section 1, Title 76, O. S. 1941. These provisions of the Constitution and of the statute have put into effect in Oklahoma the maxim of common law, "Sic utere tuo ut alienum non laedas", and the defendant drilling company is liable whether or not it was negligent in the case. Tibbets and Pleasant v. Benedict, 128 Okla. 106, 261 P. 551; British-American Oil Producing Co. et al. v. McClain et vir, 191 Okla. 40, 126 P. 2d 530; Fairfax Oil Co. v. Bolinger, 186 Okla. 20, 97 P. 2d 574; St. Louis-S. F. Ry. Co. v. Matthews, 174 Okla. 167, 49 P. 2d 752. The rule laid down in Green et ux. v. General Petro-

leum Corporation, 205 Cal. 328, 270 P. 952, 60 A.L.R. 475, is the correct one, and involved facts very similar to the case at bar, except that in that case it was the lessee who was held liable regardless of its negligence, and there was no statutory provision like section 296 involved.

The fact that the drilling company occupied the position of servant in a master and servant relationship in this instance did not release it from its duty not to injure the plaintiff in his property. This statement is found in 57 C.J.S., Master and Servant, sec. 577, p. 346:

"Generally, it is not the servant's contract with his master which exposes the servant to or protects him from liability to third persons, and liability does not arise from the existence of the relation of master and servant. The servant's liability arises from his breach of a duty owed to a third person under the law, or, as otherwise stated, from the servant's common-law obligation so to use that which he controls as not to injure another."

Citing Ryan v. Standard Oil Co. of Indiana, Mo. App., 144 S. W. 2d 170; Southern Ry. Co. v. Smith, 55 Ga. App. 689, 191 S. E. 181; Atlantic Coast Line R. Co. v. Knight, 48 Ga. App. 53, 171 S. E. 919.

I do not think that the drilling company is liable to the extent that the majority opinion makes it. It was no longer on the premises after 60 days from the drilling of the well. The record shows that the most favorable testimony for the plaintiff was that the oats would make 45 bushels (maybe) and that there were 23 acres, which would make a total yield of 1,035 bushels. Expenses that were not incurred, which should be deducted, are: cost of cutting at $1,50 per acre, or $34.50; cost of shocking, $1 per acre, or $23; cost of threshing, 3 cents per bushel, or $31.05; cost of hauling tenant's share, 2 cents per bushel on 690 bushels, or $13.80. The landlord should have gotten 345 bushels. The tenant is entitled to re-cover for 690 bushels at 75 cents per bushel, or $577.50, less the deductible items, which total $102.35, leaving a total due the plaintiff on the oats of $415.15. This amount is the highest that could be allowed the plaintiff under the testimony on the oats. There is evidence that sustains the judgment on the other items allowed, so the amount of the judgment against the oil company should be $1,802.65. The evidence shows that the cotton, hegari and cane could have been planted after the drilling company had left the lease, so there is no liability upon it for those items, which total $400. $77 was allowed as a deduction on these items in the court's judgment, and also $17.50 on the damage to the garden, so $417.50 should be deducted from the judgment against the drilling company rather than $95; so that part of the judgment for which the drilling company is liable should have been only $1,487.50.