**MID–CONTINENT PIPELINE CO.**

**v.**

**CRAUTHERS.**

No. 35319.

Supreme Court of Oklahoma.

Feb. 23, 1954.

R. H. Wills, J. H. Crocker, J. P. Greve, J. H. Woodard, Ben Hatcher, and Walter B. Hall, Tulsa, for plaintiff in error.

Doyle Watson, Drumright, Kermit Nash, Hobbs, New Mexico, for defendant in error.

WILLIAMS, Justice.

Parties will be designated as in the trial court.

Plaintiff sued defendant for damages allegedly resulting from the pollution of a natural watercourse running through plaintiff's land.

Most of the facts were stipulated, substantially as follows: plaintiff owned a certain designated quarter section of land. C. R. Colpitt and T. S. Colpitt owned and operated an oil lease in a section adjoining the section wherein plaintiff's land was located. Defendant Mid-Continent Pipeline Company owned and operated a certain pipe line which was used to transport oil from the lease of the Colpitts. Said Colpitts furnished power which operated the defendant company's pump used to pump the oil produced from said lease and stored in a tank thereon into said pipe line, the pump being located on their lease, and being owned by the defendant company. The pump was operated by an employee of the Colpitts. By virtue of an agreement which had existed between the Colpitts and the company for some time, the gauger of the defendant company customarily gauged the tanks on the Colpitt lease, and when one was ready for delivery, the gauger notified the pumper employed by the Colpitts, who thereupon connected the power to the pipe line pump, and pumped the oil into the pipe line of the defendant. On or about May 18, 1950, the regular pumper was injured, and a substitute pumper was hired by the Colpitts to take his place. He was instructed by the regular pumper in his duties. On that same day, he was advised by the gauger that a tank was ready for delivery; he thereupon connected the power to the pump for the purpose of transferring oil into defendant's pipe line; in so doing, he failed to set the valves properly on the pump, and as a result, oil escaped from the pump into a stream from which it flowed onto plaintiff's land in an amount sufficient to cause damage or death to cattle pasturing on said land, if they drank sufficient quantities of said oil.

It was further stipulated that the Colpitts were the agents and servants of the defendant company in the pumping of said oil into the pipe line; also, that a cow of Aberdeen Angus blood eligible for registration died within 13 days after the oil ran over plaintiff's land; and that she was due to drop a calf within 30 days of her death, and that if the defendant company were liable for the death of the cow, it was also liable for the reasonable value of the unborn calf at the time of its birth, had it been born.

Defendant introduced in evidence as an exhibit attached to its answer, copy of a "Release and Covenant Not to Sue" executed by plaintiff in favor of the Colpitts. Said instrument recited the payment of $300 to plaintiff by the Colpitts as full settlement of the claim against the Colpitts in connection with the facts herein related; it also, by its terms, expressly reserved a right of action against any other persons who might have caused or assisted in causing any such damage. Execution of said instrument was not denied by plaintiff, and may be taken as having occurred.

At the trial, plaintiff introduced testimony to the effect that the cow above referred

to died as a result of drinking water polluted by oil from defendant's pipe line, and to the effect that 17 other cattle in the pasture were injured as a result of drinking polluted water from the same source. In view of our holdings below no further statement of the evidence is necessary.

The jury returned a verdict for the plaintiff in the amount of $650, and the Court rendered judgment thereon. Defendant thereafter perfected its appeal to this court from such judgment and order overruling motion for new trial.

The gist of defendant's argument is as follows: That the liability of defendant company, if any, exists solely because of the master-servant relationship existing between it and the Colpitts, and that when the servant who is the sole tort-feasor, is released (as was done in this case), the liability of the master is extinguished.

Plaintiff contends that the liability of defendant company rests not in the master-servant relationship, but because of a primary (not derivative), non-delegable duty imposed upon defendant company by 52 O.S.1951 § 296, which reads as follows:

"Refuse from wells—Disposition.— No inflammable product from any oil or gas well shall be permitted to run into any tank, pool or stream used for watering stock; and all waste of oil and refuse from tanks or wells shall be drained into proper receptacles at a safe distance from the tanks, wells or buildings, and be immediately burned or transported from the premises, and in no case shall be it permitted to flow over the land. Salt water shall not be allowed to flow over the surface of the land."

Defendant contends that said statute has no application in this case, since the undisputed evidence is that the oil escaped from a pipe line, not from an oil or gas well.

For reasons set out below, we hold that 52 O.S.1951 § 296 is not applicable in the case at hand.

This section of the statute is highly penal in nature. Franklin Drilling Co. v. Jackson, 202 Okl. 687, 217 P.2d 816,

19 A.L.R.2d 1015; Texas Co. v. Mosshamer, 175 Okl. 202, 51 P.2d 757, and penal statutes are to be strictly construed. 59 C.J. Statutes, § 660; 82 C.J.S., Statutes, § 316.

Defendant argues, and, we think, correctly, that this statute was aimed at drillers and producers of oil, not at transporters, pipe line companies, refiners, etc. In Johnson Oil Refining Co. v. Carnes, 174 Okl. 599, 51 P.2d 811, 812, this section of the statute was held not to apply to a refinery, and the statement there made by the court is applicable here:

"The statute contemplated in the instruction, and copied verbatim therein, is section 11580, O.S.1931 (52 O.S.1951 § 296). It relates purely to oil and gas wells, and has no more reference to a refinery than it has to any other industrial establishment."

In Shell Petroleum Corp. v. Wilson, 178 Okl. 355, 65 P.2d 173, 176, this section of the statute was held inapplicable to a tank farm. In his dissenting opinion in that case, Chief Justice McNeill argued that "There is nothing in this title which limits the application of article 2 to oil and gas wells"; but the court refused to adopt his interpretation.

No case is cited in the briefs, and we have found none, in which the provisions of this section of the statute were held to apply to a pipe line company. On the contrary, this court by inference held in Franklin Drilling Co. v. Jackson, supra [202 Okl. 687, 217 P.2d 817], that such statute applies only to the owner and operator of the well:

"52 O.S.1941 § 296, which provides that no inflammable product or salt water from any oil or gas well shall be permitted to flow over the land, places a duty upon the owner and the operator of such well of preventing such substances to escape from the well to the premises of others. * * *"

It is true that the above excerpt from the court's syllabus number one does not by its terms limit the application of the statute to owners and operators of wells

*only*, but a reading of the opinion and the accompanying dissent by Justice Gibson shows that this issue was squarely before the court. In that case, defendants were the owner of the lease and a drilling contractor, and Justice Gibson argued that the liability imposed by 52 O.S.1951 § 296 was limited to the owner only and did not apply to the driller. In holding to the contrary, the court said:

> "Clearly the owner of an oil and gas lease who contracts for and procures the drilling of a well is thereby no less bound to prevent oil, gas or salt water from escaping from the well to other premises. It is equally apparent that when a contractor has charge of the *operations of a well* and substances therefrom escape to other premises the statute is no less violated. * * *" (Emphasis supplied.)

> "We hold that when oil, gas or salt water flows or sprays *from a well* over the surface of land surrounding premises 52 O.S.1941 § 296 is violated and negligence as a matter of law is implied and imputed to those having charge of the *operations of such well* and to the owner of the well and such owner, or a contractor in charge, either or both may be held to answer * * *." (Emphasis supplied.)

It seems clear, from the emphasized portions above, that the prohibition imposed by 52 O.S.1951 § 296 arises only in connection with the drilling and operating of oil or gas wells, and not in connection with the transporting of such products by a pipe line company. Therefore, defendant in the case at hand has not violated such statute, and is not guilty of negligence per se in connection therewith. If the verdict and judgment against such defendant are to be sustained, some other ground of liability must exist.

Under the facts in this case, the only negligence of which the defendant company could possibly be guilty was the negligence of its agents or employees, the Colpitts, whose pumper turned the wrong valve and caused the oil to flow into the watercourse instead of the pipe line. See 57 C.J.S., Master and Servant, § 570a, which reads in part as follows:

> "Under the doctrine of respondeat superior, a master is liable for injury to the person or property of another proximately resulting from the acts of his servant done within the scope of his employment in the master's service."

Therefore, the liability of the defendant pipe line company can arise, if at all, only by virtue of the doctrine of respondeat superior.

As hereinabove recited, the Colpitts made a settlement with the plaintiff herein, and received a "Release and Covenant Not to Sue." Such being the case, defendant pipe line company (the master) cannot be held to answer under the doctrine of respondeat superior. See 35 Am. Jur., Master and Servant, sec. 535, wherein the following is found:

> "According to the great weight of authority, where both master and servant are liable to a third party for a tort of the servant, a valid release of either master or servant from liability for the tort operates to release the other."

See also Consolidated Gas Utilities Co. v. Beatie, 167 Okl. 71, 27 P.2d 813; Shell Petroleum Corp. v. Wilson, 178 Okl. 355, 65 P.2d 173.

The above rule is of course inapplicable where the master is guilty of some independent or concurring act of negligence, but in the instant case no such act was either pleaded or proved.

Therefore, since the defendant herein is not liable by reason of 52 O.S.1951 § 296, is not guilty of any independent or concurring act of negligence, and cannot be held liable under the doctrine of respondeat superior because the servant was released, it follows that the plaintiff was not entitled to recover.

The judgment is reversed with directions to enter judgment for defendant.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, DAVISON, O'NEAL and BLACKBIRD, JJ., concur.