**CALIFORNIA OIL COMPANY,**
Plaintiff in Error,

v.

**S. F. DAVENPORT, Defendant in Error.**
**No. 41144.**

Supreme Court of Oklahoma.
June 27, 1967.

As Corrected on Denial of Rehearing
Oct. 3, 1967.

Second Rehearing Denied Jan. 16, 1968.

Otey & Evans, George Otey, Jr., Ardmore, Crawford W. Cameron, Marietta, Geo. N. Otey, Ardmore, for plaintiff in error.

Wallace & Bickford, by Wilson Wallace, Ardmore, for defendant in error.

HODGES, Justice.

S. F. Davenport was the owner of an agricultural lease covering a quarter section of land in Love County, Oklahoma. California Oil Company was the owner of an oil and gas lease covering said land. In April of 1961, defendant commenced the drilling of a well on the property. Thereafter, in June, the defendant paid $500.00 to the plaintiff as consideration for the latter signing a written release of liability. One of the principal issues concerns the effective extent of that release and whether it included the subsequent damages to plaintiff's cattle which are sought in this action. We will discuss this issue more in detail later.

Plaintiff Davenport brought this suit to recover for the alleged damage and injuries to his cattle, based upon a violation of Title 52, § 296, Oklahoma Statutes, said statute reading:

"No inflammable product from any oil or gas well shall be permitted to run into any tank, pool or stream used for watering stock; and all waste of oil and refuse

from tanks or wells shall be drained into proper receptacles at a safe distance from the tanks, wells or buildings, and be immediately burned or transported from the premises, and in no case shall it be permitted to flow over the land. Salt water shall not be allowed to flow over the surface of the land."

The trial court instructed on the basis that this statute is applicable and defendant urges that the trial court erred by so doing.

The evidence showed that the defendant entered upon the land and graded a roadway to the well location and that low places were left around the drill site, which could collect water. The defendant used chemicals (tannics and caustics) in the drilling operation, housing the same in a metal storage house and then carried by workmen to a mixing hopper, where it was mixed with water and used along with mud in its drilling operations. The evidence was conflicting as to whether any of such chemicals escaped from the actual drilling location and washed into the low places adjacent to the drilling operations where plaintiff's cattle were pasturing. This conflicting evidence presented a fact question which was properly submitted to a jury.

■ Defendant complains that 52 O.S. § 296, supra, is inapplicable because this was a drilling well and no oil or gas had been produced from the same at the time of the alleged injury and damage to plaintiff's cattle. In Franklin Drilling Co. et al. v. Jackson, 202 Okl. 687, 217 P.2d 816, 19 A.L.R.2d 1015 this Court said:

"Under 52 O.S.1941, § 296, the owner of an oil and gas lease who contracts for and procures the drilling of a well and the contractor in charge of the drilling operations are both bound to prevent substances from escaping from the well to the premises of another during the period of drilling operations.

In an action to recover damages resulting from a violation of 52 O.S.1941, § 296, proof of negligence is not essential to a recovery."

Chemicals, such as are used in drilling operations, may be more dangerous and detrimental to persons or property than oil, gas or salt water. The above statute specifically prohibits any person from permitting refuse from wells to flow over the land, and if the statute is violated and proximately causes injury to another, then there is liability without proof of any negligence.

The fact that the well had not yet been completed as a producer does not relieve the defendant from the liability of the statute.

■ Defendant urges that there was no causal connection between the alleged escape of chemicals, and the injury to Davenport's cattle. Davenport's evidence was that to the South of the drill site was a low place in his pasture and that water from rains and water from the crew washing around the drilling rig carried the chemicals into the low areas and that he saw chemical sacks that had blown from the drilling rig into the low areas. Davenport testified that he saw his cattle drink from the depressions and pools where the chemicals allegedly flowed. Defendant testified that it had ditched around its drill site and any run off of water would go into an open pit immediately adjacent to the drilling well and would not run off into the pasture. It will thus be seen that there was a conflict of evidence on the question of whether the chemicals did actually flow over the lands of Davenport and the fact question was properly submitted to the jury.

Defendant also urges that there is no competent evidence to show that the injuries to Davenport's cattle were caused as a result of drinking chemicals. Dr. L., a veterinarian, made autopsies on several of Davenport's cattle within a matter of hours after they had died. He testified that the cattle died from poisoning and that it definitely was not the type caused by eating grasses or weeds, but instead died from consuming a poisonous black substance. He took samples from some of the depressions where the chemicals allegedly flowed and they were analyzed by a labo-

ratory and the report was introduced into evidence. Dr. L. stated that it was his opinion that the cattle did drink the water from the depressions and that the water did contain chemicals, and that the cattle became sick as a result from drinking the water causing the resulting injuries. The defendant likewise introduced convincing evidence by experts that the cattle did not die from chemical poisoning. Again, however, this was a question of fact which was properly submitted to a jury and the question was resolved in favor of Davenport.

In Mid-Continent Pipe Line Co. v. Price, 203 Okl. 626, 225 P.2d 176, this court stated:

"If there is any evidence which reasonably tends to prove directly or indirectly or by permissive inference the essential facts, the verdict of jury must stand.

In a civil case, in order to establish his claim, plaintiff need only make it appear to be more probable that injury came in whole or in part from defendant's negligence than from any other cause, and such fact may be established by circumstantial evidence and reasonable inferences to be drawn therefrom."

■ We conclude that the evidence produced by Davenport, along with the reasonable inferences to be drawn therefrom, is sufficient to support the verdict returned by the jury in his favor.

Defendant also urges error in the trial court submitting the meaning of a certain release to the jury. Prior to commencing drilling operations, defendant paid Davenport $500.00 and took a release, which was introduced into evidence. Defendant alleges that the wording of the release covered all damages which had accrued or might accrue, either in contract or in tort, arising out of the drilling and completion of the well including livestock damage that may accrue in the future. The release was on a form apparently used by California Oil Company in settling damages of this kind and the amount paid and the terms applying to the particular release in question were written in on the prepared form as follows:

"In full and complete settlement, compromise and satisfaction of any and all losses, costs and damages of every kind or nature whatsoever, actual or exemplary, including those caused or occasioned * * * from * * * Moving in, rigging up, drilling, testing and completion of the R. F. Brannan, et al, Unit 1–A * * *"

■ The release applies only to that portion of the leased premises which was reasonably necessary for the location, development and completion of the well in question. In the drilling of a well it is not necessary for a lessee to use all of the leased land. Each party contemplates that only a portion of the land will be necessary for that purpose. The release reflects this was the intention of the parties. As previously stated the evidence was conflicting as to whether the chemicals escaped from the actual drilling location and onto portions of the land adjacent to the drilling site where the plaintiff's cattle were pasturing. But with such conflicting evidence the issue was properly presented to the jury. The trial court instructed the jury that the defendant was under obligation to use only that portion of land which was reasonably necessary for the purpose of exploring, drilling and producing oil, gas and other minerals and "not to permit deleterious and poisonous substances to escape from their operating area into holes or low places which would be available for the cattle of the plaintiff to drink from." We find no error in this instruction.

■ The cases cited by the defendant, Darby Petroleum Co. v. Bowers, 185 Okl. 285, 91 P.2d 663; Kay Pharmacal Co. v. Dalious Construction Co., Okl., 276 P.2d 756 and Wade v. Tapp, Okl., 285 P.2d 377, for the proposition that the plaintiff is estopped from maintaining this action by reason of the written release, show that the releases therein were unambiguous and extended to release the matters sought for in the ac-

tions. In the present case the trial court properly determined as a matter of law that the release did not encompass damages on that portion of land which was not reasonably necessary for the exploration, development and completion of the well in question.

The fact that the trial court further submitted to the jury the question of whether the parties contemplated and intended the release to cover future damages to livestock was superfluous, and if error, harmless. The plaintiff does not contend that his cattle were injured within the confines of the operational area of the well, but rather the deleterious materials of the defendant were permitted to flow from that location to an area which was not reasonably necessary for the use and development of the well.

The defendant also complains that it was prevented from having a fair and impartial trial on account of misconduct of opposing counsel. While the conduct and remarks of counsel for Davenport was improper in certain instances, we find no prejudice of a sufficient nature to effect a reversal of the judgment.

In the case of Juckes v. Rogers, 206 Okl. 663, 246 P.2d 335, this court said in Syllabus 4:

"In order for alleged misconduct of counsel in argument to the jury to effect a reversal of a judgment it must appear that substantial prejudice resulted therefrom and that the jury was influenced thereby to the material detriment of the party complaining."

Defendant further contends the amount of the verdict was excessive and unsupported by the evidence. The plaintiff alleged damages accruing from the death of certain cattle, and injury to others, totaling $6,884.00. There was evidence, both from plaintiff and from qualified disinterested witnesses who were familiar with plaintiff's herd both before and after injury. Aside from the claim the cattle were not poisoned, no issue is made as to the number of calves aborted. The principal argument is that the cattle which were lost were overpriced, and that the amount claimed for loss of weight in the remaining herd, plus the loss for aborted calves, was excessive as shown by the evidence relative to market price.

By placing an interpretation upon the evidence of value of plaintiff's cattle different from the interpretation evidently found by the jury as to value and credibility of witnesses testifying thereto, defendant concludes that in no event could the jury find against defendant for more than $3,259.00. Evidence was introduced upon the question of value of the cattle before and after the injury and the amount of the jury's verdict was within the permissible limits reflected by the evidence. In such cases we cannot substitute our judgment for that of the jury.

The defendant also asserts error of the trial court in instructing the jury that the measure of damages to plaintiff's cattle was the fair market value before and after the injuries. The defendant contends that this measure of damages as applied to the cattle which did not die and suffered no permanent injury is tantamount to an award for pain and suffering, which is not an element of damage. The argument of the defendant presupposes that the cattle were not sold and the plaintiff suffered no damage. The plaintiff first noticed a change of condition in his herd around the 1st day of July. On August 17, he found some of the cattle dead. In September he sold those cattle which were sick. The plaintiff testified as to the market value of the cattle before they were injured and the market value when they were sold. In Deep Rock Oil Corp. v. Griffeth, 177 Okl. 208, 58 P.2d 323, we held:

"Where cattle are damaged and depreciated in value as a result of drinking water from a polluted stream, the measure of damages is the difference between the reasonable market value of said cattle immediately prior to and subsequent to the injury,"

Under the facts herein we find no error in the trial court's instruction.

Judgment affirmed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, LAVENDER and McINERNEY, JJ., concur.

BERRY, J., concurs in result.